1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   HEROIC ERA, LTD,                  )
                                       )
12            Plaintiff(s),            )      No. C10-2458 SBA (BZ)
                                       )
13       v.                            )
                                       )      **REPORT AND RECOMMENDATION**
14   EVONY, LLC, et al.,               )      **REGARDING EVONY'S MOTION**
                                       )      **FOR DEFAULT JUDGMENT**
15            Defendant(s).            )
     _____)
16

17        Evony, LLC and Regan Mercantile, LLC (collectively

18   "Evony") have moved for entry of default judgment against

19   Heroic Era, LTD based on Evony's counterclaims.  Docket No.

20   92.  By Order dated March 22, 2010, the Honorable Saundra B.

21   Armstrong referred to me Evony's motion.  Docket No. 95.  I

22   set a hearing for May 4, 2011.  Docket No. 97.  Evony appeared

23   at this hearing via telephone.  Heroic Era did not respond to

24   Evony's motion and did not appear at the hearing.  The

25   following is my report and recommendation for the entry of

26   default judgment against Heroic Era.

27

28

                                 1

On August 13, 2010, Evony filed its counterclaim[1] against
Heroic Era for (1) copyright infringement under 17 U.S.C. §§
501 *et seq.*; and (2) misappropriation of copyright.[2]  Docket
No. 19.  From the beginning, Heroic Era chose not to comply
with its discovery obligations.  Based on its non-compliance,
I ordered Heroic Era to produce certain documents and a Rule
30(b)(6) witness for deposition by March 9.  Docket No. 78.  I
warned Heroic Era that failure to abide by my Order may result
in sanctions pursuant to Rule 37(b)(2)(A), such as the entry
of Heroic Era's default on Evony's counterclaims.  Id.  On
March 9, Heroic Era's counsel notified the Court that Heroic
Era would not produce documents or a corporate witness in
direct violation of my Order.  Thus, I struck Heroic Era's
complaint and dismissed its action against Evony with
prejudice.  Docket No. 89.  I also struck Heroic Era's answer
to Evony's counterclaim and entered Heroic Era's default.  Id.

Pursuant to FRCP 55(b)(2), a court may enter a default
judgment against a party whose default has been entered.[3]  The
decision to grant or deny a default judgment under FRCP 55(b)
is within a court's discretion.  Eitel v. McCool, 782 F.2d

---

[1]     Heroic Era's complaint, which sought a declaratory
judgment that its video game did not infringe Evony's
copyrighted video game and other relief, was filed on June 3,
2010.  Docket No. 1.

[2]     Evony's motion for default judgment only seeks
damages and injunctive relief under its copyright infringement
claim.  Thus, I do not address Evony's misappropriation claim.

[3]     Courts may not enter default judgment against an
unrepresented minor, an incompetent person, or a person in
military service.  See FRCP 55(b)(2); 50 App. U.S.C. § 521.
Corporate defendants, however, are not subject to these
limitations.

1470, 1471-72 (9th Cir. 1986).  Although a formal hearing is
not required for a court to render a default judgment, Davis
v. Fendler, 650 F.2d 1154 (9th Cir. 1981), plaintiffs have the
burden of proving damages through testimony, written
affidavit, or other relevant evidence.  See Bd. of Trs. of the
Boilermaker Vacation Trust v. Skelly, Inc., 389 F.Supp.2d
1222, 1226 (N.D. Cal. 2005).

By its default, Heroic Era is deemed to have admitted
the well-pleaded averments of Evony's counterclaim except
those as to the amount of damages.  FRCP 8(b)(6).  To
establish copyright infringement, Evony must prove that it
owned a valid copyright in its work which Heroic Era infringed
by copying protected elements of that work.  Three Boys Music
Corp. v. Bolton, 212 F.3d 477, 481-82 (9th Cir. 2000).  Here,
Evony developed and copyrighted an internet-based video game
called Evony.  See Counterclaim, Ex. 1.  Heroic Era, who had
access to Evony's copyrighted game through one of Evony's
former employees, infringed this copyright when it copied
protected elements of Evony's game and launched a competing
game called Caesary.  Id.; see also Expert Report of Mark
Frappier.  The source code for Heroic Era's game even
contained the same typographical errors as the source code for
Evony's game.  Id.  Based on these admitted facts, Evony has
established a claim for copyright infringement and I recommend
entering a default judgment against Heroic Era.  The only
remaining issue is the relief available to Evony.

Evony argues that under 17 U.S.C. § 504(b) it is entitled
to an award of both actual damages, by way of Heroic Era's

3

1  profits, and statutory damages. Docket No. 92 at 13. This is
2  incorrect. Section 504(b) specifically provides that a
3  copyright infringer may only recover actual damages or
4  statutory damages. See also 4-14 Nimmer on Copyright § 14.01
5  ("it is further clear, under the [Copyright Act], that an
6  election to recover statutory damages precludes not only a
7  recovery of actual damages, but also a recovery of the
8  defendant's profits").

9      Evony's request for actual damages is based on Heroic
10 Era's profits. Evony submitted evidence it obtained during
11 discovery that Heroic Era generated $226,839.75 in revenue
12 through its infringing game. O'Connor Declaration at ¶ 10;
13 Ex. 9. Under Section 504(b), Heroic Era has the burden to
14 prove its deductible expenses so that its profits can be
15 determined. Heroic Era, however, has not contested damages
16 nor offered any proof of its expenses. When faced with the
17 task of analyzing profits involving defendants in default,
18 some courts have held that "[d]oubts regarding the actual
19 amount of profit received are to be resolved against the
20 infringer." Allergan, Inc. v. Mira Life Group, Inc., 2004 WL
21 2734822 at *4 (C.D. Cal. 2004)(citations omitted)(holding that
22 in a trademark infringement case if "an infringing defendant
23 does not provide evidence from which the court can derive the
24 total profit by deducting costs from revenues, the court may
25 award the entirety of revenue as profit"). I recommend the
26 same procedure be followed here and Evony be allowed to
27 recover $226,839.75 in actual damages for the profits made by
28 Heroic Era.

4

1    In its request for statutory damages, Evony argues that
2  it is entitled to recover $150,000 for each willful
3  infringement committed by Heroic Era.  See 17 U.S.C. 504(c).
4  It claims that Heroic Era published seven versions of its
5  infringing game after the copyright to Evony was registered
6  and that it should recover for each one of these infringements
7  for a total amount of $1,050,000.00 in statutory damages.  See
8  Expert Report of Mark Frappier.  However, statutory damages
9  under Section 504(c) are based on the number of works that
10 have been infringed and not on the individual incidents of
11 infringement.  See Venegas-Hernandez v. Sonolux Records, 370
12 F.3d 183, 195 (1st. Cir. 2004); Mason v. Montgomery Data,
13 Inc., 967 F.2d 135, 143-44 (5th Cir. 1992)("So if a plaintiff
14 proves that one defendant committed five separate
15 infringements of one copyrighted work, that plaintiff is
16 entitled to only one award of statutory damages...")(emphasis
17 in original); see also 4-14 Nimmer on Copyright § 14.04("The
18 House Report [on the Copyright Act] explains the principle as
19 follows: 'A single infringer of a single work is liable for a
20 single amount...no matter how many acts of infringement are
21 involved in the action and regardless of whether the acts were
22 separate, isolated, or occurred in a related series.'"  Here,
23 Evony was the owner of only one copyrighted work and therefore
24 Heroic Era's publication of different versions of its game did
25 not constitute multiple acts of infringement.

26   Evony's reliance on Columbia Pictures Television, Inc. v.
27 Krypton Broadcasting of Birmingham, Inc., 259 F.3d 1186 (9th
28 Cir. 2001), and Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d

5

1106 (1st Cir. 1993), is misplaced.  In these cases, the
courts awarded statutory damages for multiple acts of
infringement, finding that each episode of a copyrighted
television series constituted a separate work.  See id.  That
is not the case here because Evony's request for statutory
damages is based on only one separate work — its copyrighted
*Evony* game — and not on multiple works like different
television episodes.  Evony can only recover statutory damages
for one act of willful infringement in the amount of
$150,000.00.[4]

As explained earlier, Evony is not entitled to both
actual damages and statutory damage.  Since Evony's request
for actual damages is greater than the amount of statutory
damages it can recover, I recommend an award of actual damages
in the amount of $226,839.75.

Under 17 U.S.C. § 505, Evony is also entitled to recover
reasonable attorneys' fees and costs.  With respect to fees,
Evony seeks an award of $311,252.71.  To determine the
reasonable amount of attorneys' fees, courts should "calculate
the 'lodestar figure' by taking the number of hours reasonably

---

[4]    During oral argument, Evony argued that it is
entitled to recover both actual damages and statutory damages
because each version of *Caesary* that was published by Heroic
Era constituted a derivative work.  Copyright protection
extends to works derived from the copyrighted work, such as "a
translation, musical arrangement, dramatization,
fictionalization, motion picture version, sound recording, art
reproduction, abridgment, condensation, or any other form in
which a work may be recast, transformed, or adapted." 17 U.S.C.
§§ 101, 103.  I do not believe that Evony can use Section 103
of the Copyright Act to avoid the rule of Section 504(c) by
claiming that some of the infringing works are derivative of
the original underlying work and Evony has not provided any
authority for its position.

1   expended on the litigation and multiplying it by a reasonable
2   hourly rate."  <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1119
3   (9th Cir. 2000)(citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433
4   (1983)); <u>Crommie v. State of Cal.</u>, 840 F.Supp. 719, 724-25
5   (N.D. Cal. 1994)(establishing the lodestar method as the
6   proper method of calculation for attorneys' fees under state
7   law).[5]  Courts begin by determining whether the number of
8   hours expended litigating this matter was reasonable in light
9   of the work performed and the context of the case.  <u>See</u>
10  <u>McGrath v. County of Nev.</u>, 67 F.3d 248, 254 (9th Cir. 1995).
11  If the number of hours was unreasonable, courts may exclude
12  any hours that are excessive, redundant, or otherwise
13  unnecessary.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).

14      Before defaulting on the last day of fact discovery,
15  Heroic Era forced Evony to engage in pre-lawsuit discussions
16  and the entire discovery process.  Heroic Era's refusal to
17  participate in good faith in the discovery process also
18  compelled Evony to expend time conducting third-party
19  discovery and seeking discovery relief from the Court.[6]  Due
20  to Heroic Era's conduct, Evony's counsel were required to
21  spend a significant amount of time working on this case.

22

23      [5]    Courts must review detailed time records to determine
    whether the hours expended on a matter were reasonable or
24  excessive, and they must also determine the reasonable hourly
    rate by looking to "the rate prevailing in the community for
25  similar work performed by attorneys of comparable skill,
    experience, and reputation."  <u>Chalmers v. City of L.A.</u>, 796
26  F.2d 1205, 1210-11 (9th Cir. 1986), <u>reh'g denied</u>, <u>amended on</u>
    <u>other grounds</u>, 808 F.2d 1373 (9th Cir. 1987).
27

28      [6]    At times, it appeared that Heroic Era was
    purposefully delaying and obfuscating these proceedings.

7

1  Having reviewed the time counsel expended on this matter, I am
2  satisfied that these hours were reasonable and necessary in
3  light of the work performed and the context of the case.

4      In support of its hourly rate, Evony's counsel submit
5  declarations outlining each timekeeper's experience and
6  attesting that the hourly rates charged by counsel are
7  comparable to those of other attorneys in the community
8  practicing in the same field.[7]  I am satisfied that the hourly
9  rates charged by Evony's counsel are reasonable for their
10 level of experience.  Accordingly, I recommend awarding Evony
11 $311,252.71 for the attorneys' fees it incurred.  Because this
12 amount already constitutes a significant award for fees, I do
13 not recommend granting Evony's request for an upward
14 enhancement.

15     With respect to costs, Evony seeks an award of
16 $70,120.91.  This total reflects $36,417.16 in litigation
17 expenses in connection with the traveling, printing, copying,
18 postage, legal research, and other minor costs incurred in the
19 case.  In the Ninth Circuit, such costs are recoverable under
20 Section 505 as long as they are reasonable.  See Identity Arts
21 v. Best Buy Enterprise Services Inc., 2008 WL 820674 at *9
22 (N.D. Cal. 2008).  The other aspect of Evony's request for
23 costs is the $33,703.75 it paid to its expert.  Reasonable
24 expert fees are also recoverable under Section 505.  See
25 ExperExchange, Inc. v. Doculex, Inc., 2010 WL 1881484 at *11

26

27      [7]    Evony also submits surveys of average hourly rates
   charged by attorneys that further corroborate that counsel's
28 hourly rates in this matter are reasonable.

8

1    (N.D. Cal. 2010).  I am satisfied that these costs incurred by

2    counsel are reasonable and they should be granted for the

3    amount requested: $70,120.91.

4         Evony seeks post-judgment interest on the aggregate sum

5    of damages, attorneys' fees, and costs awarded.  Under 28

6    U.S.C. § 1961(a), such interest "shall be allowed on any money

7    judgment in a civil case recovered in a district court."

8    <u>Autodesk, Inc. v. Flores</u>, 2011 WL 337836 at *10 (N.D. Cal.

9    2011).  Thus, I recommend awarding Evony post-judgment

10   interest as calculated under 28 U.S.C. § 1961.

11        Because Heroic Era refused to comply with its

12   discovery obligations, Evony was unable to obtain a full

13   accounting of the revenues Heroic Era made from its *Caesary*

14   game.  Evony requests such an accounting because it will

15   assist Evony in ascertaining the full scope of damages

16   inflicted by Heroic Era.  I recommend granting Evony's request

17   for an accounting.

18        Lastly, Evony asks the Court to enter certain injunctive

19   relief.  Injunctions are permitted under 17 U.S.C. § 502(a) to

20   "prevent or restrain infringement of a copyright."  Here,

21   Heroic Era has admitted violating the Copyright Act and there

22   is no assurance that it will not continue to infringe Evony's

23   copyrights.  See <u>Sony Music Entertainment Inc. v. Elias</u>, 2004

24   WL 141959 at *4-5 (C.D. Cal. 2004)(granting injunctive relief

25   with respect to plaintiffs' existing materials and those

26   created in the future).  I therefore recommend that the Court

27   grant Evony's request to enjoin Heroic Era as outlined below.

28        But I do not recommend granting Evony's request to

9

1  specifically include non-parties in the injunction. Under
2  FRCP 65(d)(2), an injunction may properly enjoin Heroic Era
3  and its "officers, agents, servants, employees, and attorneys"
4  and "other persons who are in active concert or participation"
5  with Heroic Era, but it cannot specifically name non-parties,
6  such as Feng Investment, Ltd., since courts cannot take any
7  enforcement action against non-parties before they are given
8  notice and an opportunity to be heard. <u>See</u> <u>Lake Shore Asset</u>
9  <u>Mgmt. Ltd. v. Commodity Futures Trading Comm'n</u>, 511 F.3d 762
10 (7th Cir. 2007)(citing <u>Zenith Radio Corp. v. Hazeltine</u>
11 <u>Research, Inc.</u>, 395 U.S. 100 (1969))(holding that the named
12 party in the lawsuit "must be the sole addressee of the
13 injunction").

14     For the foregoing reasons, I recommend that judgment be
15 entered in Evony's favor against Heroic Era for a total award
16 of $608,213.37 plus post-judgment interest. In addition, I
17 recommend that the Court grant Evony the following injunctive
18 relief:

19

20     1.     Heroic Era and its officers, agents, servants,
21 employees, attorneys, and other persons who are in active
22 concert or participation with them who receive actual notice
23 of this Order by personal service or otherwise are restrained
24 and enjoined, each and every one of them, from:

25          a.     Selling, distributing, advertising, or
26              displaying, directly or indirectly, the *Caesary* Game
27              or the *Caesary* Game source code, any copy of the
28              *Caesary* Game or *Caesary* Game source code, or any

                              10

derivative works of the *Caesary* Game or *Caesary* Game source code;

    b.    Selling, distributing, advertising, or displaying, directly or indirectly, the Evony Game or the Evony Game source code, any copy of the Evony Game or Evony Game source code, or any derivative works of the Evony Game or Evony Game source code;

    c.    Selling, distributing, advertising, or displaying, directly or indirectly any product that contains, implements, or emulates the look and feel of the Evony Game or Evony Game source code.

2.    Heroic Era and its officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are further ordered to shut down or disable access to the *Caesary* Game, including but not limited to www.caesary.net, http://caesary.aeriagames.com, http://caesary.lekool.com, and any related websites, forums, chat rooms, servers or other online media.

3.    Heroic Era and its officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are further ordered, pursuant to 17 U.S.C. § 503(b), to deliver up to Evony for destruction the following items, which are within their possession, custody or control, or that can be obtained

by them through reasonable efforts, within seven (7) days of this Order:

    a.    All copies of the *Evony* Game, including any software or source code for the *Evony* Game; and

    b.    All copies of the *Caesary* Game, including any software or source code for the *Caesary* Game.

4.    Heroic Era must, within seven (7) days of this Order, notify its officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons active in concert or participation with it in the copying, sale, advertising, distribution, publication and display of the *Caesary* Game of this Order and its directives.

5.    Heroic Era must, within seven (7) days of this Order, produce to Evony documents showing an accounting of all revenues generated from the copying, sale, advertising, distribution, publication and display of *Caesary* Game.

6.    Heroic Era must, within seven (7) days of this Order, file with this Court a notice of compliance with this Order, signed by a representative of Heroic Era and its counsel.

Dated: May 5, 2011

Bernard Zimmerman
United States Magistrate Judge

12