Steven M. Cowley (admitted *pro hac vice*)
scowley@eapdlaw.com
Andrew T. O'Connor (admitted *pro hac vice*)
aoconnor@eapdlaw.com
Joshua W. Gardner  (admitted *pro hac vice*)
jgardner@eapdlaw.com
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
P: (617) 239-0100
F: (888) 325-9541

Jon-Paul Lapointe (CA Bar. No. 250546)
jlapointe@eapdlaw.com
EDWARDS ANGELL PALMER & DODGE LLP
660 Newport Center Drive, Suite 900
Newport Beach, CA 92660
P: (949) 423-2100

Attorneys for Defendants / Counterclaim Plaintiffs
EVONY, LLC and REGAN MERCANTILE, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| HEROIC ERA, LTD., | Case No.  10-cv-2458-SBA (BZ) |
| Plaintiff / Counterclaim Defendant, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927** |
| v. | The Honorable Saundra B. Armstrong |
| EVONY, LLC, et al., | Magistrate Judge Bernard Zimmerman |
| Defendants / Counterclaim Plaintiffs. | Date: Tuesday, July 12, 2011<br>Time: 1:00 p.m.<br>Location: Courtroom 1, 4th Floor |

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-cv-2458-SBA (BZ)

BOS 872216

1

## <u>TABLE OF CONTENTS</u>

ISSUE TO BE DECIDED ........................................................................ - 1 -

STATEMENT OF RELEVANT FACTS ................................................ - 2 -

ARGUMENT ......................................................................................... - 4 -

I.    LEGAL STANDARD FOR AWARDING SANCTIONS
      UNDER 28 U.S.C. § 1927 ............................................................... - 4 –

II.   HEROIC ERA'S COUNSEL CONTINUED TO LITIGATE THE
      NONINFRINGEMENT CLAIM WITHOUT ANY EVIDENTIARY BASIS AND
      WERE COMPLICIT IN CONCEALING HEROIC ERA'S INFRINGEMENT ......... - 6 -

      A.    HEROIC ERA'S COUNSEL CONTINUED TO LITIGATE THE NONINFRINGEMENT
            CLAIM WITHOUT ANY BASIS ......................................................... - 6 -

      B.    HEROIC ERA'S COUNSEL WERE COMPLICIT IN CONCEALING HEROIC ERA'S
            WILLFUL INFRINGEMENT ............................................................. - 10 -

III.  HEROIC ERA'S COUNSEL HAD NO GOOD FAITH BASIS FOR
      CONTINUING TO PURSUE THE TORTIOUS INTERFERENCE CLAIMS
      AND OBSTRUCTED EVONY'S EFFORTS TO OBTAIN DISCOVERY ............... - 12 -

      A.    HEROIC ERA'S COUNSEL PURSUED THE TORTIOUS INTERFERENCE CLAIM
            DESPITE NOT HAVING ANY EVIDENCE TO SUPPORT THE CLAIM FOR
            DAMAGES ................................................................................. - 12 -

      B.    HEROIC ERA'S COUNSEL PROCEEDED WITH THE CLAIM OF TORTIOUS
            INTERFERENCE WITH BUSINESS RELATIONS BETWEEN HEROIC ERA AND
            PAYPAL WITHOUT ANY EVIDENTIARY SUPPORT ............................... - 14 -

      C.    HEROIC ERA'S COUNSEL IMPEDED THE DISCOVERY PROCESS ......... - 15 -

IV.   HEROIC ERA'S COUNSEL CONTINUED TO LITIGATE AFFIRMATIVE
      DEFENSES WITHOUT ANY EVIDENTIARY BASIS .......................... - 20 -

V.    HEROIC ERA'S COUNSEL WERE "PURPOSELY OBFUSCATING AND
      DELAYING THESE PROCEEDINGS" IN AN EFFORT TO CONCEAL
      HEROIC ERA'S INFRINGEMENT AND PROFITS .............................. - 21 -

VI.   EVONY'S REQUEST FOR SANCTIONS ........................................... - 24 -

VII.  CONCLUSION ............................................................................... - 25 -

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

i

BOS 872216

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Cotterill v. City and County of San Francisco,*
  No. 08-2295, 2010 U.S. Dist. LEXIS 28310 (N.D. Cal. Mar. 10, 2010) ........1, 5, 7, 12, 15, 22

*Lahiri v. Universal Music and Video Distribution Corp.,*
  606 F.3d 1216 (9th Cir. 2010) ......................................................................4, 7

*Life Point Sys. v. Cargill, Inc.,*
  No. 93-20352, 1997 U.S. Dist. LEXIS 22836 (N.D. Cal. Aug. 7, 1997)..............................13

*Neft v. Vidmark, Inc.,*
  No. 91-56471, 1993 U.S. App. LEXIS 31109 (9th Cir. Nov. 17, 1993) ......................5, 7, 15

*Pratt v. State of California,*
  11 Fed. App'x. 833 (9th Cir. 2001)........................................................ 4, 5, 6, 21

*Roadway Express Inc. v. Piper,*
  447 U.S. 752, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) ....................................12

*Toombs v. Leone,*
  777 F.2d 465 (9th Cir. 1985) ...................................................................5

*Trulis v. Barton,*
  107 F.3d 685 (9th Cir. 1995) ...............................................................5, 19

*West Coast Theater Corp. v. City of Portland,*
  897 F.2d 1519 (9th Cir. 1990) ........................................................ 5, 7, 9, 14, 15


STATUTES

17 U.S.C. § 505.................................................................................24

28 U.S.C. § 636(e) ..............................................................................3

28 U.S.C. § 1927................................................................................passim


OTHER AUTHORITIES

FED. R. CIV. P. 7.1 ............................................................................15

FED. R. CIV. P. 26..............................................................................16

EDWARDS ANGELL
PALMER & DODGE
LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FED. R. CIV. P. 26(g)(1)(A) ................................................................................................13

Fed. R. Civ. P. 30(b)(6) ..........................................................................................19, 23

Local Rule 3-16 ...................................................................................................15, 16

Local Rule 79.................................................................................................................23

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-cv-2458-SBA (BZ)

BOS 872216

1    Counsel for plaintiff Heroic Era, Ltd. ("Heroic Era") engaged in a litany of obfuscation

2    and delay tactics that had no other purpose but to mask the frivolousness of Heroic Era's claims,

3    conceal Heroic Era's infringement, prevent discovery into Heroic Era's corporate structure,

4    affiliates and financials, and prolong Heroic Era's efforts to obtain profits from its infringing

5    *Caesary* game before its inevitable default.  The Court recognized that the misconduct by Heroic

6    Era's counsel appeared purposeful and unreasonably forced defendants Evony, LLC and Regan

7    Mercantile, LLC (collectively, "Evony") to bear the burden of the excessive costs of having to

8    deal with such bad faith litigation tactics:

9
> Before defaulting on the last day of fact discovery, Heroic Era forced
10 > Evony to engage in pre-lawsuit discussions and the entire discovery
> process.  Heroic Era's refusal to participate in good faith in the discovery
11 > process also compelled Evony to expend time conducting third-party
> discovery and seeking discovery relief from the Court.  Due to Heroic
12 > Era's conduct, Evony's counsel were required to spend a significant
> amount of time working on this case. . . .  At times, it appeared that Heroic
13 > Era was purposefully delaying and obfuscating these proceedings.

14   [Report and Recommendation Regarding Evony's Motion for Default Judgment ("Report"), ECF

15   No. 108, at 7]; *see Cotterill v. City and County of San Francisco*, No. 08-2295, 2010 U.S. Dist.

16   LEXIS 28310 at *21-22 (N.D. Cal. Mar. 10, 2010) ("Sanctions are often imposed for conduct that

17   is undertaken to delay the conclusion of the proceedings.").  As set forth herein, Heroic Era's

18   counsel should have ceased litigating this case as early as August 2010 when it became apparent

19   there was no support for Heroic Era's claims.  Choosing instead to pursue groundless claims and

20   arguments while engaging in purposeful obfuscation and delay tactics unreasonably and

21   vexatiously increased the costs of this litigation justifying sanctions against Heroic Era's counsel

22   pursuant to 28 U.S.C. § 1927.

23                                    **ISSUE TO BE DECIDED**

24   Whether Heroic Era's counsel, Derek Newman and Derek Linke, should be required,

25   pursuant to 28 U.S.C. § 1927, to satisfy personally the excess costs, expenses, and attorneys' fees

26   reasonably incurred by Evony resulting from Heroic Era's counsel multiplying these proceedings

27   in this case unreasonably and vexatiously.

28

1

## STATEMENT OF RELEVANT FACTS

2      Evony is a developer and operator of video game software, including the internet browser-

3    based multiplayer real-time simulation strategy game known as *Evony*® ("*Evony* Game") [Answer

4    by Evony, LLC and Regan Mercantile, LLC to Complaint, Affirmative Defenses and

5    Counterclaims ("Counterclaims"), ECF No. 19, at ¶ 10]. Evony is the owner of all exclusive and

6    substantial rights and privileges in U.S. Copyright Registration No. TX0007175070 comprising

7    the computer code of the *Evony* Game (the "*Evony* Game Code"). [Counterclaims at ¶¶ 11 and

8    21]. By its default, Heroic Era admits that it had access to Evony's copyrighted *Evony* Game

9    Code through one of Evony's former contract employees and infringed Evony's copyright by

10   copying protected elements of the *Evony* Game Code and launching a competing game called

11   *Caesary*. [Report at 3]. Evony submitted expert testimony establishing copyright infringement,

12   including analysis of the publicly available aspects of Heroic Era's *Caesary* game code, which

13   was shown to contain the same typographical errors found in the copyrighted *Evony* Game Code.

14   [*Id.*]. Magistrate Judge Zimmerman's Report concluded: "Evony has established a claim for

15   copyright infringement." [*Id.*].

16      In an attempt to block Evony's efforts to end the infringing publication of the *Caesary*

17   game on third party gaming sites, Heroic Era's counsel, Derek A. Newman ("Mr. Newman"),

18   commenced this action on June 3, 2010 by signing and filing a complaint for declaratory judgment

19   that the *Caesary* game does not infringe Evony's copyrighted material (Count I), did not

20   misappropriate Evony's trade secrets (Count II) and alleging that Evony tortiously interfered with

21   business relations between Heroic Era and PayPal and Kongregate (Count III). [Complaint, ECF

22   No. 1]. On June 8, 2010, Derek Linke ("Mr. Linke") filed an application for admission to practice

23   in this Court *pro hac vice* in this action, listing Mr. Newman as "co-counsel." [ECF No. 5]. Mr.

24   Newman and Mr. Linke (collectively, "Heroic Era's Counsel") are both from the law firm of

25   Newman DuWors LLP, formerly Newman & Newman Attorneys at Law LLP,[1] have been listed

26

------

27   [1] The last document submitted to this Court by Heroic Era listed Mr. Newman and Mr. Linke as both being from the law firm of Newman & Newman Attorneys at Law, LLP. [ECF No. 88]. The Newman & Newman website, www.newmanlaw.com, reveals that the firm changed its name

28   to Newman DuWors, LLP.

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-cv-2458-SBA (BZ)

on every pleading, motion and discovery response served by Heroic Era, received service of every document filed with or issued by the Court in this action, and are the only two attorneys listed as counsel of record for Heroic Era in this action.

Prior to responding to Heroic Era's Complaint, and in an effort to resolve this case without delay or additional expense of litigation, Evony provided Heroic Era's Counsel with excerpts from an expert report analyzing numerous instances of Heroic Era's *Caesary* game copying the Evony Game Code (the "Frappier Analysis"). [Evony's Opp. to Mtn. to Quash Subpoena, ECF No. 67, at 2-3 (citing Affidavit of Marco Mereu ("Mereu Aff."), ECF No. 67-6, at ¶ 3)]. Failing to obtain its own expert analysis of Evony's expert's conclusions, Heroic Era's Counsel was ultimately forced to concede, in response to requests for production, that there was no evidentiary support for Heroic Era's claim of noninfringement. [Heroic Era Responses to Request for Production Nos. 72, 73 and 75 (O'Connor Decl., Ex. 1)]. Heroic Era and its Counsel nonetheless steadfastly pursued a strategy of blocking any progress toward resolution of the dispute on the merits, and they refused to provide any meaningful discovery into Heroic Era's actual operations and its competing software code. Having given Heroic Era several chances to comply with its discovery obligations and Court orders, the Court recognized that the stonewalling tactics utilized by Heroic Era's Counsel made it apparent that "there's been a pattern of trying to evade discovery by Heroic Era," that "a fair inference would be that, notwithstanding what they say, [Heroic Era] is hiding something," and that the discovery abuses perpetrated by Heroic Era and its Counsel was "one of the more egregious cases." [Feb. 25, 2011 Tr. at 37:11-13 and 30:1-8 (O'Connor Decl., Ex. 2)].

Triggered by blatant discovery abuses and litigation misconduct, the Court issued an order on March 9, 2011 dismissing all of Heroic Era's claims with prejudice, holding Heroic Era in contempt pursuant to 28 U.S.C. § 636(e), and entering default against Heroic Era. [Order Imposing Sanctions, ECF No. 89 (Zimmerman, M.J.)]. At the hearing that ultimately led to the Court's March 9, 2011 Order, the Court admonished Heroic Era's Counsel for failing to properly exercise professional duties and responsibilities and threatened referral to the Court's "Professional Responsibility Committee." [Feb. 25, 2011 Tr. at 17:9-18:21 (O'Connor Decl., Ex.

Edwards Angell
Palmer & Dodge
LLP

Defendants' Motion for Sanctions
Civil Action No. 10-cv-2458-SBA (BZ)

BOS 872216

2); *see also id.* at 34:2-8 ("What I may simply do is refer Mr. Linke to our professional disciplinary committee.  You know, if you want to practice in this district, you've got to do what we expect…")].  On March 15, 2011, Evony filed its Motion for Default Judgment.  [ECF Nos. 92 and 93].  In compliance with the Court's April 25, 2011 Order [ECF No. 101], Evony submitted its application for attorneys' fees and costs on April 29, 2011.  [*See* ECF Nos. 103 and 106].

On May 5, 2011, Magistrate Judge Zimmerman issued the Report recommending that the Court enter default judgment against Heroic Era and, *inter alia*, award Evony $368,385.15 in attorneys' fees and costs.  [ECF No. 108]  The Report noted the abuses perpetrated by Heroic Era's Counsel throughout this litigation:

> Before defaulting on the last day of fact discovery, Heroic Era forced Evony to engage in pre-lawsuit discussions and the entire discovery process.  Heroic Era's refusal to participate in good faith in the discovery process also compelled Evony to expend time conducting third-party discovery and seeking discovery relief from the Court.  Due to Heroic Era's conduct, Evony's counsel were required to spend a significant amount of time working on this case.

[Report at 7].  Magistrate Judge Zimmerman further noted that, "[a]t times, it appeared that Heroic Era was purposefully delaying and obfuscating these proceedings."  [*Id.* at n.6].

## ARGUMENT

### I.    LEGAL STANDARD FOR AWARDING SANCTIONS UNDER 28 U.S.C. § 1927

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  In the Ninth Circuit, an award of sanctions under 28 U.S.C. § 1927 "must be supported by a finding of subjective bad faith."  *Pratt v. State of California*, 11 Fed. App'x. 833 at 835 (9th Cir. 2001) (quoting *In re Keegan Mgmt. Co. Securities Litig.*, 78 F.3d 431, 436 (9th Cir. 1995)).  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *Pratt*, 11 Fed. App'x. at 835 (quoting *In re Keegan*, 78 F.3d at 436).  Accordingly, "[r]ecklessness suffices for § 1927 sanctions."  *Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th

Edwards Angell
Palmer & Dodge
LLP

Defendants' Motion for Sanctions
Civil Action No. 10-cv-2458-SBA (BZ)

BOS 872216

1   Cir. 2010) (affirming award of § 1927 sanctions for recklessly pursuing "meritless copyright

2   infringement claims"); *see also Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995) (reversing

3   district court's failure to award § 1927 sanctions because "[t]he uncontroverted facts demonstrate

4   subjective bad faith as a matter of law."); *see also West Coast Theater Corp. v. City of Portland*,

5   897 F.2d 1519, 1528 (9th Cir. 1990) (affirming district court award of § 1927 sanctions because

6   "the record indicates that [plaintiff's] counsel recklessly proceeded with the litigation despite a

7   complete lack of factual support"); *see also Neft v. Vidmark, Inc.*, No. 91-56471, 1993 U.S. App.

8   LEXIS 31109 at *10 (9th Cir. Nov. 17, 1993) (affirming district court award of § 1927 sanctions

9   because plaintiff's counsel "recklessly proceeded with the litigation despite a complete lack of

10   factual support for his claim."); *see also Cotterill v. City and County of San Francisco*, 2010 U.S.

11   Dist. LEXIS 28310 at *42-43 (N.D. Cal. Mar. 10, 2010) (Awarding § 1927 sanctions because

12   "maintenance of this suit after November 5, 2008 was reckless as a matter of law, and

13   unreasonably and vexatiously multiplied the proceedings in violation of § 1927.").

14         A finding of subjective bad faith can be inferred from counsel's conduct. *Pratt*, 11 Fed.

15   App'x. at 835-836 (affirming award of § 1927 sanctions, noting, "[a]lthough the district court did

16   not explicitly make a finding of frivolity or of intent to harass, it did so implicitly with respect to

17   plaintiff's counsels' 'actions and inactions'"); *see also Toombs v. Leone*, 777 F.2d 465, 471 (9th

18   Cir. 1985) (affirming § 1927 sanctions, noting that, "[w]hile the district court made no express

19   finding as to sanctioned counsel's state of mind, the record sets forth sufficient evidence to

20   support its decision.").

21         Evony's motion for sanctions is against Mr. Newman and Mr. Linke.  Mr. Newman and

22   Mr. Linke are both from the same law firm, Newman DuWors LLP, formerly Newman &

23   Newman Attorneys at Law LLP.  Mr. Newman and Mr. Linke have been the *only* counsel of

24   record for Heroic Era since the inception of the case.  [*See* Complaint, ECF No. 1 (signed by Mr.

25   Newman and identifying Mr. Linke as "*pro hac vice* to be filed")].  Mr. Newman and Mr. Linke

26   both appear on every pleading, motion and discovery response served by Heroic Era in this

27   action.  Mr. Newman and Mr. Linke were both served with every document issued by or filed

28

- 5 -

1   with the Court through the Court's ECF System.  On May 19, 2011, both Mr. Newman and Mr.

2   Linke participated in the meet and confer with counsel for Evony regarding Evony's filing of this

3   motion.  [O'Connor Decl., Ex. and ¶ 28].  Without any documents indicating to the contrary,[2] the

4   record demonstrates that Mr. Newman and Mr. Linke, working together in the same firm and

5   listed together on every pleading, discovery response and motion throughout the duration of this

6   case, are jointly liable for any award of sanctions pursuant to 28 U.S.C. § 1927 resulting from the

7   misconduct described herein.  *See Pratt*, 11 Fed. App'x. at 836 (finding district court did not err

8   in holding co-counsel from different law firms jointly liable for sanctions).

9   **II.   HEROIC ERA'S COUNSEL CONTINUED TO LITIGATE THE

10        NONINFRINGEMENT CLAIM WITHOUT ANY EVIDENTIARY BASIS AND
        WERE COMPLICIT IN CONCEALING HEROIC ERA'S INFRINGEMENT**

11        Heroic Era's Counsel continued to litigate Heroic Era's claim of noninfringement of

12   copyright without any evidentiary support and in the face of uncontroverted evidence undermining

13   the claim.  Heroic Era's Counsel denied disclosing highly confidential material to Heroic Era, then

14   dragged Evony through the burden of addressing discovery briefing in two courts before

15   ultimately confessing in open Court to having disclosed portions of Evony's proprietary and

16   highly confidential material.  Such unauthorized disclosure enabled Heroic Era to modify its

17   *Caesary* game code in order to conceal its infringement and continue profiting from its infringing

18   *Caesary* game.  Without any evidentiary support, Heroic Era's Counsel continued to litigate the

19   noninfringement claim and engaged in bad faith discovery tactics that appeared to have no other

20   purpose but to obfuscate and delay these proceedings while Heroic Era continued to publish and

21   profit from its infringing *Caesary* game.  Such reckless and complicit behavior by Heroic Era's

22   counsel necessitates sanctions pursuant to 28 U.S.C. § 1927.

23        **A.   HEROIC ERA'S COUNSEL CONTINUED TO LITIGATE THE NONINFRINGEMENT

24        CLAIM WITHOUT ANY BASIS**

25        In an effort to efficiently resolve this copyright dispute, before it even responded to the

26   declaratory judgment Complaint, Evony provided Heroic Era's Counsel with excerpts from the

27   _____

28   [2] Heroic Era was ordered to produce all documents withheld on the basis of privilege.  [Order
     After Hearing, ECF No. 78, at ¶ 3].

Frappier Analysis of numerous instances of Heroic Era's *Caesary* game copying the Evony Game Code.  [Evony's Opp. to Mtn. to Quash Subpoena, ECF No. 67, at 2-3 (citing Aff. of Marco Mereu ("Mereu Aff."), ECF No. 67-6, at ¶ 3)].  Failing to obtain its own expert analysis of Evony's expert's conclusions, Heroic Era's Counsel was ultimately forced to concede, in response to requests for production, that there was no evidentiary support for Heroic Era's claim of noninfringement.  [Heroic Era Responses to Requests for Production Nos. 72, 73 and 75 (O'Connor Decl., Ex. 1)].  Yet Heroic Era's Counsel did everything in its power to prolong this litigation for as long as possible before a default judgment entered.  "Although an attorney may be entitled to rely on his or her client for information when the action is commenced, continued reliance on client information may be unjustified when discovery fails to reveal facts necessary to maintain the claim."  *Cotterill*, 2010 U.S. Dist. LEXIS at *37-38.  Such reckless, if not willfully obstructive, conduct by Heroic Era's Counsel forced Evony to bear the expense of engaging in months of unproductive discovery, justifying sanctions pursuant to 28 U.S.C. § 1927.  *See Lahiri*, 606 F.3d at 1220-1221 (affirming district court's award of sanctions under § 1927 because plaintiff's counsel failed to investigate the basis of its copyright claim); *see also West Coast Theater Corp.*, 897 F.2d at 1528 (affirming § 1927 sanctions because "the record indicates that [plaintiff's] counsel recklessly proceeded with the litigation despite a complete lack of factual support"); *see also Neft*, 1993 U.S. App. LEXIS at *10 (affirming award of § 1927 sanctions because plaintiff's counsel "recklessly proceeded with the litigation despite a complete lack of factual support for his claim.").

Because the Frappier Analysis relied in part on, and therefore disclosed, proprietary code, Evony had to be extremely circumspect when sharing this report and any references to its code with anyone associated with Heroic Era.  [Mereu Aff., ECF No. 67-6, at ¶ 3].  Accordingly, Evony first required Heroic Era's Counsel to maintain the Frappier Analysis as "attorney's eyes only" (the "Non-Disclosure Agreement").  [*Id.* at ¶ 4 and Ex. A].

On July 30, 2010, Heroic Era's Counsel received the Frappier Analysis containing portions of Evony's copyrighted material from Evony under the terms of the Non-Disclosure Agreement.

1    [O'Connor Decl., Ex. 3].  The Frappier Analysis set forth unequivocal factual support for the

2    conclusion that Heroic Era's *Caesary* game infringed Evony's copyrighted code.  [Mereu Aff. at ¶

3    5; *see also* Frappier Expert Report, ECF No. 92-2 (filed under seal)].  On August 5, 2010, Heroic

4    Era's Counsel stated that it would be "productive" if he could share with Heroic Era the portions

5    of the Frappier Analysis identifying examples of copying.  [O'Connor Decl., Ex. 4 ("I believe that

6    it would be productive if I were able to share the following subset of the materials with Heroic

7    Era…")].  Evony replied that it would only be willing to agree to such disclosure if the individuals

8    at Heroic Era intending to view the materials would sign the Non-Disclosure Agreement.

9    [O'Connor Decl., Ex. 5].  Heroic Era refused.  [*Id.* ("I do not believe Heroic Era will be signing

10   the agreement.")].  Consequently, Heroic Era's Counsel was not authorized to disclose or

11   disseminate any portion of the Frappier Analysis or Evony code to Heroic Era.

12         In the face of the Frappier Analysis identifying numerous instances of the Heroic Era

13   *Caesary* game copying the copyrighted Evony Game Code, Heroic Era's Counsel made no effort

14   to investigate whether the claim for a declaratory judgment of noninfringement had any merit, yet

15   continued to litigate the claim.  In response to Evony's requests for production seeking "[a]ll

16   documents referencing or concerning any analysis of the Evony Game source code," "any

17   opinions of counsel regarding the alleged infringement of the '070 Copyright," and "any analysis

18   of whether Heroic Era infringed or infringes the '070 Copyright," Heroic Era's Counsel signed

19   and served responses to each stating: "Heroic Era has no responsive documents."  [Heroic Era's

20   Response to Request for Production Nos. 72, 73 and 75 (O'Connor Decl., Ex. 1)].  These

21   responses establish a complete lack of investigation concerning the claims Heroic Era's Counsel

22   was prosecuting, even after receiving the Frappier Analysis.[3]  Choosing to ignore their duty to

23   cease litigating given the lack of evidence to support the claim was, at a minimum, reckless, and

24   forced Evony to incur the added cost and expense of litigating this case that would have otherwise

---

[3] Although Heroic Era was ordered to produce all documents withheld on the basis of privilege by
March 9, 2011 [Order After Hearing, ECF No. 78 at ¶ 3], no documents responsive to these
document requests were produced.  [*See* O'Connor Decl., Ex. 6].  Presumably, Heroic Era's
Counsel would not withhold documents in knowing defiance of the Court's Order, which means
that Heroic Era's Counsel did not even receive an analysis supporting noninfringement in writing
from their client.

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

BOS 872216

been unnecessary.  Such bad faith is sanctionable pursuant to 28 U.S.C. § 1927.  *See West Coast Theater Corp.*, 897 F.2d at 1528 (9th Cir. 1990) (affirming district court award of § 1927 sanctions because "the record indicates that [plaintiff's] counsel recklessly proceeded with the litigation despite a complete lack of factual support").

Apparently, the *only* purported basis for Heroic Era's claim that it does not infringe Evony's copyright is the uncorroborated self-serving statement by Heroic Era that it did not copy the Evony Game Code, but Heroic Era's Counsel conceded that there was no evidence to support this self-serving statement.  In response to Interrogatory No. 1, requesting that Heroic Era "[s]tate the basis for Heroic Era's contention that it does not infringe the '070 Copyright," Heroic Era responded:

> Heroic Era incorporates its General Objections by reference and further objects that Interrogatory No. 1 seeks documents protected by the attorney-client privilege and the work-product doctrine.  Notwithstanding the foregoing objections, Heroic Era answers as follows:
>
> Heroic Era develops and operates Internet-based games.  In April 2009, Heroic Era began developing the browser-based real-time strategy game, *Caesary*.  Over twenty employees and independent contractors worked on *Caesary*.  These employees and independent contractors created *Caesary* without the unauthorized use of any other parties' proprietary information, original source code, or other materials.  Heroic Era and the developers of *Caesary* did not use Evony's proprietary information, original source code, or other materials.
>
> Discovery is still ongoing, and Heroic Era will supplement this answer as further responsive information is discovered.

[O'Connor Decl., Ex. 7].  No supplementation was ever provided.  [Order After Hearing, ECF No. 78, at ¶ 5].  In response to requests for production requesting "[a]ll documents referencing or concerning Heroic Era's claim that 'Heroic Era began developing *Caesary* in April 2009," that "over twenty employees and independent contractors have worked on *Caesary*," and that "Heroic Era developed *Caesary* independently and without the use of any [] other parties' proprietary information, original source code, or other materials," Heroic Era's Counsel signed the responses stating:  "Heroic Era has no responsive documents."  [Heroic Era's Response to Request for Production Nos. 88-90 (O'Connor Decl., Ex. 1)].[4]

---

[4] Moreover, in response to Request for Production No. 168 seeking "[a]ll documents referencing or concerning any facts related to Heroic Era's responses to interrogatories," Heroic Era's

Edwards Angell
Palmer & Dodge
LLP

Defendants' Motion for Sanctions
Civil Action No. 10-cv-2458-SBA (BZ)

BOS 872216

1    Heroic Era's Counsel aggressively pursued the claim of non-infringement and only

2    begrudgingly acknowledged that their client never provided any evidentiary support for that

3    position.  Counsel's bad faith tactics forced Evony to bear the heavy cost of the entire discovery

4    process, including motions to compel, preparations for depositions and third party discovery,

5    justifying an award of sanctions against Heroic Era's Counsel pursuant to 28 U.S.C. § 1927.

6        **B.    HEROIC ERA'S COUNSEL WERE COMPLICIT IN CONCEALING HEROIC ERA'S
7                 WILLFUL INFRINGEMENT**

8        The portion of the Frappier Analysis disclosed to Heroic Era's Counsel under the terms of

9    the Non-Disclosure Agreement did not include all instances of Heroic Era's copying, but instead

10   included only select examples of copying.  Subsequent to the disclosure to Heroic Era's Counsel,

11   Heroic Era made portions of its *Caesary* code publicly available for download on the internet.

12   [Mereu Aff., ECF No. 67-6, at ¶¶ 5-6].  Evony analyzed this publicly available portion of the

13   *Caesary* Game Code and discovered that the portion of the code showing examples of copying

14   disclosed to Heroic Era's Counsel had been changed, while the examples of copying that had not

15   been disclosed to Heroic Era's Counsel were not changed.  [*Id.* at ¶ 7].

16       Troubled by this apparent breach of the Non-Disclosure Agreement, Evony sent a letter to

17   Heroic Era's Counsel on November 1, 2010 requesting an explanation.  [ECF No. 67-1].  Heroic

18   Era's Counsel did not respond.  On November 12, 2010, Evony sent Heroic Era's Counsel another

19   request for an explanation, which was again ignored.  [O'Connor Decl., Ex. 8].  On November 24,

20   2010, Evony sent yet another letter to Heroic Era's Counsel, this time attaching a draft subpoena

21   for deposition and documents on Newman & Newman and requesting that a meet and confer be

22   held on November 29, 2010 in an effort to avoid burdening the parties and the Court with

23   unnecessary motion practice.  [ECF No. 67-2 ("If we cannot reach an agreement, Evony agrees to

24   seek leave to issue the enclosed document subpoena and a deposition subpoena, rather than put

25   your firm to the burden of seeking a protective order.")].  Yet again, Heroic Era's Counsel did not

26   respond, forcing Evony to serve Heroic Era's Counsel with a subpoena.

27

28   Counsel responded:  "Heroic Era has no responsive documents."  [O'Connor Decl., Ex. 1].

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

BOS 872216

1    Rather than deal forthrightly with Evony on this very troubling issue, Heroic Era's

2  Counsel quietly filed a motion (on behalf of Heroic Era) to quash the subpoena in the Western

3  District of Washington on December 15, 2010 without first contacting Evony, forcing Evony to

4  hire local counsel and engage in expensive motion practice.  [*See* ECF No. 68].  Heroic Era's

5  Counsel attempted to sandbag Evony by noticing the motion prematurely, choosing a hearing date

6  of December 24, 2010 (Christmas Eve), and then sending the motion by regular mail only to

7  Evony's counsel in Boston, Massachusetts, on December 15, 2010,[5] all in violation of the local

8  rules of the Western District of Washington.  [*See* Opp. to Mtn. to Quash, ECF No. 67, at 5-7].

9  Such gamesmanship by Heroic Era's Counsel exemplifies the wholesale lack of good faith

10 underlying their entire approach to this litigation.[6]

11    Even more concerning, Heroic Era's Counsel submitted a declaration in support of the

12 motion to quash stating, under the perjury, that Heroic Era's Counsel "has not disclosed,

13 disseminated or transferred the Evony Code outside the firm."  [Linke Decl. at ¶ 12 (ECF No. 68-

14 3)].  Heroic Era's Counsel also submitted a supplemental declaration stating, again under the

15 penalty of perjury, that "Heroic Era's counsel has not shared with anyone outside the Firm any

16 expert reports which Evony provided to Heroic Era's counsel under the Agreement.  Nor has

17 Heroic Era's counsel disclosed to anyone outside the Firm any portions of computer code

18 identified in any such expert reports."  [Linke Supp. Decl. at ¶ 13 (ECF No. 68-5)].  When pressed

19 by this Court at the February 25, 2011 hearing on Heroic Era's motion,[7] however, Heroic Era's

20 Counsel confessed to having "disclosed characterizations of the nature of that content.

21 Specifically, the kinds of content that led them to believe that there was copyright-infringement."

22 [Feb. 25, 2011 Tr. at 9:16-19 (O'Connor Decl., Ex. 2)].  This admitted disclosure not only

23

24 [5] Curiously, while the Certificate of Service on the motion says it was served by mail on December 15, 2010 (the day of filing), the postmark is dated December 16, 2010.  [ECF No. 67 at n.1].

25

26 [6] Heroic Era had the audacity to demand that Evony should pay Heroic Era's fees and costs associated with having to file the motion, conveniently failing to disclose to the Court Evony's efforts to meet and confer and express offer to avoid the need for any motion by Heroic Era.

27 [ECF No. 68-4 at 5].

28 [7] Western District of Washington transferred Heroic Era's motion to this Court.  [ECF No. 64].

1   contradicted the previous statements by Heroic Era's Counsel made under the pain and penalty of

2   perjury, it violated the terms of the Non-Disclosure Agreement expressly stating that Heroic Era's

3   Counsel was not permitted to "disclose or disseminate" any portion of the code or expert report.

4   [O'Connor Decl., Ex. 8].

5          By leaking information concerning Evony's expert analysis to Heroic Era in violation of

6   the Non-Dislcosure Agreement (after which Heroic Era made changes to its software code to

7   mask evidence of its copying), then concealing such unauthorized disclosure using false

8   representations in declarations supporting a motion to quash Evony's efforts to learn the truth of

9   what had occurred, Heroic Era's Counsel became disturbingly complicit in their client's infringing

10  scheme, meriting sanctions pursuant to 28 U.S.C. § 1927. *See Cotterill*, 2010 U.S. Dist. LEXIS at

11  *42-43 (citing *Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S. Ct. 2455, 65 L. Ed. 2d 488

12  (1980)) ("The purpose of 28 U.S.C.A. § 1927 is to limit abuse of judicial processes and to

13  discourage dilatory litigation practices.").

14  ### III.   HEROIC ERA'S COUNSEL HAD NO GOOD FAITH BASIS FOR CONTINUING TO PURSUE THE TORTIOUS INTERFERENCE CLAIMS AND OBSTRUCTED EVONY'S EFFORTS TO OBTAIN DISCOVERY

16         Count III of Heroic Era's Complaint alleges that Evony tortiously interfered with Heroic

17  Era's business relationships under California Law.  [ECF No. 1].  Heroic Era specifically claims

18  that Evony tortiously interfered with Heroic Era's business relations with PayPal, Inc. ("PayPal")

19  and Kongregate, Inc. ("Kongregate"), yet concedes that it could support neither the *prima facie*

20  elements of damages nor that a "business relationship" existed between Heroic Era and PayPal.

21  Additionally, Heroic Era's Counsel obstructed Evony's efforts to obtain discovery into the alleged

22  business relationships and damages claims, forcing Evony to file multiple motions to compel,

23  undertake third party discovery, and file a separate lawsuit.

24  ### A.   HEROIC ERA'S COUNSEL PURSUED THE TORTIOUS INTERFERENCE CLAIM DESPITE NOT HAVING ANY EVIDENCE TO SUPPORT THE CLAIM FOR DAMAGES

26         After making contradictory representations concerning Heroic Era's damage claims,

27  Heroic Era's Counsel conceded there was no evidentiary support for this *prima facie* element of

28

Edwards Angell
Palmer & Dodge
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

BOS 872216

1    Heroic Era's tortious interference claim, yet they continued to force Evony to litigate the claim.

2    Under California law, a plaintiff alleging tortious interference has the burden of proving:

3              (1) they had an existing business relationship with a third party which
               contained the probability of future economic benefit to Plaintiffs; (2) that
4              Defendants had knowledge of this relationship; (3) that Defendants
               intentionally violated a business relationship which Plaintiffs had with a
5              third party; (4) that the relationship was actually disrupted; and, (5) *that
               Plaintiffs **suffered damage** as a result of such disruption*.
6

7    *Life Point Sys. v. Cargill, Inc.*, No. 93-20352, 1997 U.S. Dist. LEXIS 22836, at *17 (N.D. Cal.

8    Aug. 7, 1997) (emphasis added).

9              In its Complaint, signed by Heroic Era's Counsel, Heroic Era's prayer for relief included

10   "actual damages." [ECF No. 1 at 9].  This was contradicted by Heroic Era's initial disclosures,

11   which were also signed by Heroic Era's Counsel: "Heroic Era has not claimed damages in the

12   above-captioned lawsuit." [O'Connor Decl., Ex. 9].[8]  Heroic Era's Counsel was unable to provide

13   any explanation for this contradiction, forcing Evony to file a motion to compel to ascertain the

14   basis for Heroic Era's claim.  [ECF No. 37].  After a telephonic hearing with the Court [ECF No.

15   42], Heroic Era's Counsel shifted positions again by signing and serving Heroic Era's

16   Supplemental Initial Disclosures representing that "Heroic Era has requested damages arising

17   from Evony's ongoing tortious interference." [O'Connor Decl., Ex. 10].  During a meet and

18   confer between counsel within hours of serving the Supplemental Initial Disclosures, Heroic Era's

19   Counsel clarified that Heroic Era was seeking damages in the form of "lost revenue" for its claim

20   of tortious interference and offered to provide "a breakdown with the source of damages," but this

21   "breakdown" was never provided.  [Nov. 3, 2010 Tr. at 32:14-23 (O'Connor Decl., Ex. 11)].

22   Likewise, in response to Interrogatory No. 4 requesting Heroic Era to "[s]tate the basis for Heroic

23   Era's contention that Heroic Era has been harmed as a result of Evony's alleged tortious

24   interference, including a description and calculation of all damages suffered by Heroic Era,"

25   Heroic Era responded that it "lost substantial revenue." [O'Connor Decl., Ex. 7].

26

27   _____
     [8] Pursuant to FED. R. CIV. P. 26(g)(1)(A), "[b]y signing [initial disclosures], an attorney or party
     certifies that to the best of the person's knowledge, information and belief formed after a
28   reasonable inquiry, . . . it is complete and correct as of the time it is made."

1    Heroic Era's Counsel conceded that there were no financial documents to support the

2    claim of having "lost substantial revenue" derived from the infringing *Caesary* game.  [*See* Heroic

3    Era's Responses to Requests for Production Nos. 163-170 ("Heroic Era has no responsive

4    documents.") (O'Connor Decl., Ex. 1); *see also* Report at 9 ("Because Heroic Era refused to

5    comply with its discovery obligations, Evony was unable to obtain a full accounting of the

6    revenues Heroic Era made from its *Caesary* game.")].   Nonetheless, Heroic Era's Counsel

7    continued to litigate the tortious interference claims without any evidentiary support for the *prima*

8    *facie* element of damages.  *West Coast Theater Corp.*, 897 F.2d at 1528 (affirming district court

9    award of § 1927 sanctions because "the record indicates that [plaintiff's] counsel recklessly

10   proceeded with the litigation despite a complete lack of factual support").

11
12   **B.     HEROIC ERA'S COUNSEL PROCEEDED WITH THE CLAIM OF TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS BETWEEN HEROIC ERA AND PAYPAL WITHOUT ANY EVIDENTIARY SUPPORT**

13   Despite Heroic Era's claim that Evony tortiously interfered with its purported PayPal

14   business relationship, Heroic Era ultimately conceded that it has no such relationship, instead the

15   PayPal relationship is with Feng Investment, an entity Heroic Era's Counsel argues is independent

16   of Heroic Era and has no interest in this case, forcing Evony to file a separate action against that

17   company.  Notwithstanding their knowledge that Heroic Era had no "business relationship" with

18   PayPal that could be interfered with, Heroic Era's Counsel continued to litigate that claim while

19   impeding Evony's efforts to obtain discovery into the actual relationships between Heroic Era,

20   Feng Investment and PayPal.

21   Specifically, in response to Request for Production No. 143, which asked Heroic Era to

22   produce "[a]ll documents sufficient to show payments made to Heroic Era or for Heroic Era's

23   benefit from PayPal," Heroic Era's Counsel signed the response stating: "Heroic Era has no

24   responsive documents."  [O'Connor Decl., Ex. 1].  This is apparently because no such "business

25   relationship" between Heroic Era and PayPal exists.  Instead, as set forth in Heroic Era's response

26   to Regan Mercantile's Interrogatory No. 1, "Heroic Era contracts with Feng Investment, Ltd. to

27   manage and coordinate payments made through PayPal relating to *Caesary*."  [O'Connor Decl.,

28

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

BOS 872216

Ex. 12].  In response to Request for Production No. 139, however, which asked Heroic Era to

produce "[a]ll documents sufficient to show payments made to Heroic Era or for Heroic Era's

benefit from Feng Investment," Heroic Era's Counsel signed the response stating: "Heroic Era has

no responsive documents."  [O'Connor Decl., Ex. 1].

Despite representing that no documents exist showing any business relationship between

either Heroic Era and PayPal or Feng Investment and PayPal, Heroic Era's Counsel continued to

litigate the claim of tortious interference, forcing Evony to bear the burden and expense of

pursuing discovery, warranting the imposition of sanctions pursuant to 28 U.S.C. § 1927.  *See*

*Cotterill*, 2010 U.S. Dist. LEXIS at *37-38 ("Courts have imposed sanctions under 28 U.S.C.A. §

1927 for failing to dismiss a claim when the party is unable to obtain sufficient facts to support the

claim through discovery."); *see also West Coast Theater Corp.*, 897 F.2d at 1528 (affirming

district court award of § 1927 sanctions because "the record indicates that [plaintiff's] counsel

recklessly proceeded with the litigation despite a complete lack of factual support"); *see also Neft*,

1993 U.S. App. LEXIS at *10 (affirming district court award of § 1927 sanctions because

plaintiff's counsel "recklessly proceeded with the litigation despite a complete lack of factual

support for his claim.").

## C.   HEROIC ERA'S COUNSEL IMPEDED THE DISCOVERY PROCESS

As set forth in detail in Evony's first motion to compel [ECF No. 37], second motion to

compel and for contempt [ECF Nos. 69-74], motion for default judgment [ECF Ns. 92], and

motion for temporary restraining order [ECF No. 94], Heroic Era's Counsel impeded Evony's

ability to obtain discovery into the relationship between Heroic Era and Feng Investment in an

apparent effort to conceal that relationship.  This discovery misconduct forced Evony to file

motions to compel and a separate action against Feng Investment.  *See* Civil Action No. 11-cv-

00141-SBA-BZ (N.D. California).

After filing the Complaint, Heroic Era's Counsel delayed nearly four months before filing

any corporate disclosure statement or certification of interested parties, which was required to be

filed along with Heroic Era's complaint pursuant to FED. R. CIV. P. 7.1 and L.R. 3-16.  [ECF Nos.

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

BOS 872216

31-32].  During this delay, Heroic Era engaged in what its Counsel described as a "restructuring

of the company," and that Heroic Era would supplement its disclosures at some unspecified date

when that "restructuring" was complete.  [Oct. 21, 2010 O'Connor Decl., ECF No. 37-1, at ¶¶ 10-

12].  Heroic Era's Counsel refused, or was unable, to explain why Feng Investment was not

included in Heroic Era's disclosures.  [*Id.*].  Faced with publicly available information

contradicting the representations by Heroic Era's Counsel, Evony filed a motion to compel on

October 21, 2010, setting forth the publicly available information indicating that Feng Investment

had a financial interest in the *Caesary* game.  [ECF No. 37].[9]  Heroic Era's Counsel, in response,

represented to the Court that it was not obligated to disclose Feng Investment as an interested

party under FED. R. CIV. P. 26 or L.R. 3-16, which requires the disclosure of any party having a

"financial interest" in the outcome of the litigation.  [ECF No. 41].

Since Evony had already issued subpoenas on October 8, 2010 for documents and

depositions of the witnesses identified in Heroic Era's initial disclosures (none of which were

identified as having information about Feng Investment), Evony proceeded with discovery relying

on the representation by Heroic Era's Counsel that these witnesses had information relating to

Heroic Era's claim to "exclusive right" in the *Caesary* game.  [Nov. 3, 2010 Tr. at 17:1-6

(O'Connor Decl., Ex. 11); *see* subpoenas attached to Mtn. to Compel and for Contempt, Gardner

Decl. Exs. 2-10 (ECF No. 71-1 through 71-9)].  Heroic Era's Counsel, however, misled Evony

into believing that the witnesses would produce documents and appear for their depositions

pursuant to the subpoenas:

| | |
|---|---|
| Evony Counsel: | …[W]e have not received any documents in response to the subpoenas that we served on the individuals listed in the initial disclosures? |
| Heroic Era Counsel: | I haven't produced any documents on behalf of those individuals. |
| Evony Counsel: | Why not? |
| Heroic Era Counsel: | Because we are preparing them, those documents, along with the other documents that we are assembling in response to discovery requests. |

---

[9] Evony later learned that Heroic Era and Feng Investment had entered into a profit sharing
agreement regarding the *Caesary* game.  [*See* Ex. 4 to Mtn. for Temporary Restraining Order,
ECF No. 94-7].

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-cv-2458-SBA (BZ)

- 16 -

BOS 872216

| | | |
|---|---|---|
| Evony Counsel: | Do you take the position that the responses are already due? |
| Heroic Era Counsel: | No. |
| Evony Counsel: | Are the witnesses going to be produced for a deposition on the date identified, at the location identified? |
| Heroic Era Counsel: | I would assume unless counsel agrees otherwise for other dates, other times; then, yes.  I have no reason to believe that they wouldn't be. |

[Nov. 15, 2010 Tr. at 17:15-20:13 (O'Connor Decl., Ex. 13)].  Relying on the representations by Heroic Era's Counsel that they were already "preparing" documents and that the witnesses would appear, Evony made all necessary arrangements, including securing stenographers and translators for each witness, plane tickets and hotel rooms.  [ECF No. 69 at 4 (citing Gardner Decl., ¶ 3)].

On November 29, 2010, Evony sent Heroic Era's Counsel a letter reminding them that the subpoenaed documents had not been produced and noting that "[w]e are relying on your representation that you expect all witnesses to appear at their noticed depositions."  [O'Connor Decl., Ex. 14].  Receiving no response, Evony sent Heroic Era's Counsel another letter on November 30, 2010, making clear that Evony was relying on their representations that the depositions were going forward as scheduled:

> …I wrote to you yesterday concerning the depositions of [the subpoenaed witnesses].  You received that letter yesterday by email and this morning by Federal Express, but have not responded.  We are relying on your representation in Heroic Era's Initial Disclosures that these witnesses should be contacted through you.  Again, we are relying on your representation that you expect all witnesses to appear at their noticed depositions at your new office.

[O'Connor Decl., Ex. 15].  Heroic Era's Counsel waited until 5:14 p.m. PST on December 2, 2010 (8:14 p.m. EST) to respond to Evony's letters by unilaterally declaring, for the first time, that the subpoenaed witnesses would not appear for their depositions as noticed.  [O'Connor Decl., Ex. 16].

Following a December 7, 2010 telephonic hearing with counsel, the Court issued its Second Discovery Order requiring, *inter alia*, that, "[b]y December 13, 2010, plaintiff shall provide defendants with dates before January 13, 2011 on which plaintiff's subpoenaed witnesses are available for deposition" and that the parties meet and confer in an effort to resolve the discovery disputes.  [Dec. 8, 2010 Second Discovery Order, ECF No. 54].  In defiance of that

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

BOS 872216

1    Order, Heroic Era's Counsel failed to identify any dates upon which the witnesses would be

2    available for deposition and refused to meet and confer.  Specifically, on December 8, 2010,

3    Evony sent a letter to Heroic Era's Counsel noting that, pursuant to the Court's December 8

4    Order, Evony had hired a stenographer and scheduled a meet and confer to be held on December

5    13, 2010 [O'Connor Decl. Ex. 17].  Heroic Era's Counsel did not respond, choosing instead to

6    wait until just *four minutes* before the scheduled conference call to inform Evony that Heroic Era

7    would not participate in the meet and confer and, yet again, failed to identify any dates on which

8    the witnesses would appear for their depositions as ordered by the Court.  [O'Connor Decl., Ex.

9    18].  On December 14, 2010, (after the Court's deadline), Heroic Era's Counsel sent a letter to

10   Evony (backdated December 13, 2010) stating that only three of the eight subpoenaed witnesses

11   would be made available, but failed to identify any dates upon on which such witnesses would be

12   available for deposition.  [O'Connor Decl., Ex. 19].  Evony noted in response that, among other

13   things, that Heroic Era's Counsel had failed to provide any dates for conducting the depositions.

14   [O'Connor Decl., Ex. 20].  Heroic Era's Counsel never responded.  On January 5, 2010, Evony

15   sent yet another letter to Heroic Era's Counsel requesting dates upon which the witnesses would

16   be available for deposition pursuant to the subpoenas before January 13, 2011.  [O'Connor Decl.,

17   Ex. 21].  Despite the Court's express Order, no such dates were ever provided, forcing Evony to

18   file a motion to compel.  [ECF Nos. 69-74].

19          Recognizing these deplorable obfuscation and delay tactics, the Court admonished Counsel

20   for Heroic Era that such bad faith tactics are not tolerated in the Northern District of California:

21                 Or I can refer Mr. Linke to the – or I think it's called our "Professional
                   Responsibility Committee"; but, Mr. Linke, this isn't how we practice in
22                 the Northern District.  . . .  And, as I've explained to you, what I may
                   simply have to do is refer Mr. Linke to our professional disciplinary
23                 committee. You know, if you want to practice in this District, you've got to
                   do what we expect.  You don't have to practice in this district, but perhaps
24                 in Seattle you can meet and confer the way you do, but not in San
                   Francisco.  . . .  And letting somebody know four minutes before the
25                 session that you're not going to make it, in my judgment, is not the way an
                   officer of this court should comport themselves.
26

27   [Feb. 25, 2011 Tr. at 17:12-15, 34:3-8 and 35:18-24 (O'Connor Decl., Ex. 2)].  Despite the fact

28

Edwards Angell
Palmer & Dodge
LLP

Defendants' Motion for Sanctions
Civil Action No. 10-cv-2458-SBA (BZ)

- 18 -

BOS 872216

1   that the subpoenas for documents and depositions on these witnesses were served in October

2   2010, Heroic Era's Counsel obfuscated and delayed for nearly five months, misleading Evony the

3   entire way.

4          Additionally, Evony sought to take the deposition of Heroic Era pursuant to FED. R. CIV.

5   P. 30(b)(6) in order to obtain information relating to, among other things, the organizational

6   structure of Heroic Era in an effort to determine the real parties in interest.  [Defendants' Notice

7   of Deposition on Plaintiff Heroic Era, Ltd. Pursuant to Fed. R. Civ. P. 30(b)(6), ECF No. 77].

8   Heroic Era's Counsel represented to Evony and this Court that Heroic Era would produce a Rule

9   30(b)(6) witnesses for the deposition.  [Notice of Attendance at Deposition, ECF No. 82].  The

10  day before the deposition, Heroic Era's Counsel represented to Evony that Heroic Era's witness

11  would not require a translator, thus leading Evony to believe that the deposition was going

12  forward.  [O'Connor Decl., Ex. 22].  Heroic Era's Counsel, however, chose to wait until 11:00

13  p.m. PST (2:00 a.m. EST) to notify Evony and the Court that Heroic Era would not appear for the

14  Court-ordered deposition the next morning.  [O'Connor Decl., Ex. 23].

15         The conduct of Heroic Era's Counsel leaves little doubt that Heroic Era never had any

16  intention of appearing for depositions, yet misled Evony for months, forcing Evony to prepare for

17  depositions, brief motions to compel, and travel cross-country twice for two separate appearances

18  before the Court regarding these depositions.  Such misconduct suggests that Heroic Era's

19  Counsel was actively trying to conceal the nature of the relationship between Heroic Era and Feng

20  Investment that was the subject of its tortious interference claim.  As aptly recognized by the

21  Court, Heroic Era engaged "in a pattern of trying to evade discovery," inferring that,

22  "notwithstanding what they say, [Heroic Era] is hiding something."  [Feb. 25, 2011 Tr. at 37:11-

23  13 and 30:1-3 (O'Connor Decl., Ex. 2)].  Such complicit efforts to mislead Evony and delay these

24  proceedings while continuing to litigate frivolous claims necessitates an award of sanctions

25  against Heroic Era's Counsel pursuant to 28 U.S.C. § 1927.  *Trulis v. Barton*, 107 F.3d 685, 694

26  (9th Cir. 1995) (reversing district court's failure to award § 1927 sanctions because "[t]he

27  uncontroverted facts demonstrate subjective bad faith as a matter of law.").

28

Edwards Angell
Palmer & Dodge
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

- 19 -

BOS 872216

## IV.    HEROIC ERA'S COUNSEL CONTINUED TO LITIGATE AFFIRMATIVE DEFENSES WITHOUT ANY EVIDENTIARY BASIS

Heroic Era's Counsel admittedly did not know the basis for Heroic Era's affirmative defenses, then submitted discovery responses that failed to articulate any basis for those defenses and which the Court described as "boilerplate responses" that were "evasive and not made in good faith." [Order After Hearing, ECF No. 78, at ¶ 5]. Yet again, the decision by Heroic Era's Counsel to litigate affirmative defenses without any basis, forcing Evony to propound discovery and file motions to compel, unnecessarily and vexatiously increased the costs of this litigation pursuant to 28 U.S.C. § 1927.

In response to Evony's answer and counterclaims, Heroic Era asserted sixteen affirmative defenses. [ECF No. 27].[10] When asked which witnesses in the Supplemental Initial Disclosures had discoverable information supporting Heroic Era's affirmative defenses of laches, for example (Affirmative Defense 11), Heroic Era's Counsel admitted that none of them did and that discovery was needed in order to ascertain a basis for the defense. [Nov. 3, 2010 Tr. at 48:15-50:1 (O'Connor Decl., Ex. 11)]. The same is true for the affirmative defense of failure to include indispensible parties (Affirmative Defense 16), where Heroic Era's Counsel conceded that neither Heroic Era nor its Counsel knew the identities of any "indispensable parties" that would support this affirmative defense:

> Evony Counsel:      So you're not aware of who these indispensable parties are.
>
> Heroic Era Counsel:  I have suspicion, but I don't have personal knowledge, nor do any of my clients have personal knowledge.

[*Id.* at 68:18-22]. Heroic Era's Counsel nonetheless proceeded to litigate these defenses.

Additionally, in response to Interrogatories requesting Heroic Era to state the bases for affirmative defenses, the Court recognized that seven of Heroic Era's defenses, including the

---

[10] Among these were the affirmative defenses of "lack of jurisdiction" and "improper venue." [ECF No. 27 at 5]. It is not possible that Heroic Era's Counsel could have had a good faith belief in the merit of these defenses given that it was Heroic Era, as the plaintiff in this litigation, that chose this forum and asserted in its Complaint that this Court has jurisdiction over the parties and claims. [ECF No. 1 at ¶¶ 7-10].

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

BOS 872216

above, were being pursued in bad faith:

> In response to defendants' interrogatories requesting information on seven asserted affirmative defenses, plaintiff provided boilerplate responses stating "discovery is still ongoing, and Heroic Era will supplement this answer as further responsive information is discovered." Plaintiff never amended any of these responses. Because these responses are evasive and not made in good faith, these affirmative defenses are stricken.

[Order After Hearing, ECF No. 78, at ¶ 5 (internal citation omitted)].

Continuing to litigate these defenses without any basis and forcing Evony to engage in discovery and briefing motions to compel, unreasonably and vexatiously increased the costs of this litigation in bad faith such that Heroic Era's Counsel should be sanctioned pursuant to 28 U.S.C. § 1927. *See Pratt*, 11 Fed. App'x. at 835 (quoting *In re Keegan*, 78 F.3d at 436) ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument...").

## V. HEROIC ERA'S COUNSEL WERE "PURPOSELY OBFUSCATING AND DELAYING THESE PROCEEDINGS" IN AN EFFORT TO CONCEAL HEROIC ERA'S INFRINGEMENT AND PROFITS

Heroic Era's Counsel engaged in a litany of obfuscation and delay tactics that had no other purpose but to mask the frivolousness of Heroic Era's claims, prevent discovery into Heroic Era's and Feng Investment's financials, and prolong Heroic Era's efforts to obtain profits from its infringing *Caesary* game. The Court recognized that such misconduct by Heroic Era's Counsel appeared purposeful and unreasonably forced Evony to bear the burden of the excessive costs of having to deal with such bad faith litigation tactics:

> Before defaulting on the last day of fact discovery, Heroic Era forced Evony to engage in pre-lawsuit discussions and the entire discovery process. Heroic Era's refusal to participate in good faith in the discovery process also compelled Evony to expend time conducting third-party discovery and seeking discovery relief from the Court. Due to Heroic Era's conduct, Evony's counsel were required to spend a significant amount of time working on this case. . . . At times, it appeared that Heroic Era was purposefully delaying and obfuscating these proceedings.

[Report at 7 and n.6]. Such bad faith delay for the purpose of sustaining frivolous claims requires the sanctioning of Heroic Era's Counsel. *See Cotterill*, 2010 U.S. Dist. LEXIS at *21-22 ("Sanctions are often imposed for conduct that is undertaken to delay the conclusion of the

Edwards Angell
Palmer & Dodge
LLP

Defendants' Motion for Sanctions
Civil Action No. 10-cv-2458-SBA (BZ)

BOS 872216

1    proceedings.").

2         In addition to the troubling bad faith litigation tactics by Heroic Era's Counsel discussed

3    in the previous sections, for which the Court has already admonished Heroic Era's Counsel for

4    failing to practice "in a way an officer of the court should comport themselves" [Feb. 25, 2011 Tr.

5    at 34:2-35:24 (O'Connor Decl., Ex. 2)], Heroic Era's Counsel made repeated false promises,

6    refused to appear for meet and confers, and engaged in discovery abuses that likewise

7    unreasonably drove up the costs of this litigation.  The following are just some of the additional

8    examples of bad faith litigation tactics by Heroic Era's Counsel that, when combined with the

9    foregoing, unreasonably and vexatiously increased the costs of this litigation.

10        • After repeatedly representing that Heroic Era would take the initiative to provide

11          an initial draft of the required Joint Case Management Statement, Heroic Era's

12          Counsel refused to take any action, forcing Evony to file a motion for leave to file

13          the Joint Case Management Statement late.  [ECF No. 28].  Heroic Era's Counsel

14          then waited until 4:27 p.m. EDT the next day (September 21) to inform Evony that

15          they had not drafted the Joint Statement despite having "repeatedly expressed

16          [their] commitment to providing [Evony] with a draft tomorrow morning

17          [September 21]." [O'Connor Decl., Ex. 24].  Such deceptive misrepresentations by

18          Heroic Era's Counsel made a relatively straightforward task far more expensive

19          and laborious.

20        • Heroic Era's Counsel took the position that *every single* document Heroic Era

21          produced was either "Confidential" or "Highly Confidential," including publicly

22          available documents, such as website images and advertisements, in violation of

23          the Court's Protective Order.  [*See* O'Connor Decl., Ex. 25].  Heroic Era's Counsel

24          flatly refused to explain why it designated *any* documents "Confidential" or

25          "Highly Confidential."  [*Id.*].

26        • Prior to Evony filing its motion to compel on January 18, 2011, Heroic Era's

27          Counsel forced Evony to file an unnecessary administrative motion to file Heroic

28

- 22 -

Edwards Angell
Palmer & Dodge
LLP

Defendants' Motion for Sanctions
Civil Action No. 10-cv-2458-SBA (BZ)

BOS 872216

Era's documents under seal.  [ECF No. 58].  Failing to offer any justification for designating any documents "Confidential" or "Highly Confidential," the Court denied the motion to file Heroic Era's documents under seal.  [ECF No. 69].  This required Evony, in addition to filing an unnecessary administrative motion, to re-file everything, all of which could have been avoided had Heroic Era's Counsel met its obligations to meet and confer and designated documents in good faith.  [*See* ECF Nos. 69-74].

- Heroic Era's Counsel refused to meet and confer regarding the Rule 30(b)(6) deposition of Heroic Era, for which Heroic Era ultimately failed to appear despite this Court's Order and contrary representations by Heroic Era's Counsel.  [*See* ECF Nos. 81, 82 and 89].  Because Heroic Era's Counsel was thoroughly unprepared for the original February 16, 2011 meet and confer, the parties rescheduled the meet and confer for February 23, 2011.  [O'Connor Decl., Ex. 26].  After the February 23 meet and confer was scheduled to begin, however, Evony received a call from the office of Heroic Era's Counsel stating that Heroic Era's Counsel was about to board a plane and would not be attending the meet and confer.  [*Id.*].  In Evony's third attempt to meet and confer, Heroic Era's Counsel yet again failed to appear.  [*Id.*].[11]

Combined with pursuing frivolous claims using the bad faith delay tactics set forth in the preceding sections, there can be little doubt that these examples were likewise part of the overall strategy of Heroic Era's counsel to delay these proceedings as long as possible in order to allow Heroic Era as much time as possible to continue profiting from its infringing *Caesary* game.

## VI.   EVONY'S REQUEST FOR SANCTIONS

Evony requests sanctions against Heroic Era's Counsel pursuant to 28 U.S.C. § 1927 in the amount of $368,385.15 comprising Evony's excess costs, expenses and attorneys' fees reasonably incurred because of the misconduct of counsel for Heroic Era.  Evony has already submitted its

---

[11] Heroic Era's Counsel instead chose to attempt to join the conference call more than a half hour after the agreed time.  [O'Connor Decl., Ex. 26].

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-cv-2458-SBA (BZ)

BOS 872216

1    application for fees and costs and, in an effort to avoid burdening the Court with additional paper,

2    adopts that application in its entirety herein.  [ECF No. 103 (filed under seal)].  As set forth in the

3    Court's Report, "[d]ue to Heroic Era's conduct, Evony's counsel were required to spend a

4    significant amount of time working on this case.  Having reviewed the time counsel expended on

5    this matter, I am satisfied that these hours were reasonable and necessary in light of the work

6    performed and the context of the case."  [Report, ECF No. 108, at 7-8].  The Court further noted

7    that "I am satisfied that the hourly rates charged by Evony's counsel are reasonable for their level

8    of experience.  Accordingly, I recommend awarding Evony $311,252.71 for the attorneys' fees it

9    incurred."  [*Id.* at 8].  Additionally, the Court determined that, with regard to Evony's costs in this

10   litigation, "I am satisfied that these costs incurred by counsel are reasonable and they should be

11   granted for the amount requested: $70,120.91."  [*Id.* at 8-9].

12          Evony is not seeking duplicative fees and costs.  Instead, Evony is requesting that any fees

13   and costs incurred prior to July 30, 2010 should be paid by Heroic Era pursuant to 17 U.S.C. §

14   505, while any fees and costs incurred after July 30, 2010 should be paid by Heroic Era's Counsel

15   as a sanction pursuant to 28 U.S.C. § 1927.  As of July 30, 2010, when Heroic Era's counsel

16   obtained the Frappier Analysis, Heroic Era's Counsel knew or should have known that the claim

17   for declaratory judgment of noninfringement of copyright was baseless.  Without the copyright

18   claim, Heroic Era could not sustain the tortious interference claim since it was premised upon the

19   argument that Evony told third parties that Heroic Era infringed Evony's copyright.  [ECF No. 1,

20   Count III].  Therefore, Heroic Era's Counsel should have ceased prosecuting the entire case as of

21   July 30, 2010.  Subtracting out the fees and costs prior to July 30, 2010 to be paid by Heroic Era,

22   Evony seeks sanctions against Heroic Era's Counsel in the amount of $309,970.71 in fees and

23   $58,414.44 in costs, for a total of $368,385.15.  [*See* Exhibits B and C to the Declaration of

24   Jonathan Lourie, and Ex. I to the Declaration of Steven M. Cowley, both accompanying Evony's

25   Application for Fees and Costs (ECF No. 103, filed under seal)].

26

27   **VII.    CONCLUSION**

28          In light of the foregoing, Evony requests the Court enter an order awarding Evony its fees

Edwards Angell
Palmer & Dodge
LLP

Defendants' Motion for Sanctions
Civil Action No. 10-cv-2458-SBA (BZ)

BOS 872216

1  and costs against Heroic Era's Counsel in the amount of $368,385.15 associated with the

2  additional costs of having to litigate Heroic Era's frivolous claims pursuant to 28 U.S.C. § 1927.

3

4                                    Respectfully submitted,

5  Dated:       June 7, 2011          EDWARDS ANGELL PALMER & DODGE LLP

6                                    By:   /s/ Andrew T. O'Connor                        .

7                                    Steven M. Cowley
                                     Joshua W. Gardner
8                                    Andrew T. O'Connor
                                     Jon-Paul LaPointe
9
                                     Attorneys for Defendants /
10                                   Counterclaim Plaintiffs
                                     EVONY, LLC and REGAN MERCANTILE, LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-cv-2458-SBA (BZ)

- 25 -

BOS 872216

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

COMMONWEALTH OF MASSACHUSETTS, COUNTY OF SUFFOLK:

I, Andrew T. O'Connor, declare as follows:

I am employed in the County of Suffolk, Commonwealth of Massachusetts. I am over the age of 18 and not a party to the within-entitled action. My business address is 111 Huntington Avenue, Boston, Massachusetts 02119. On June 7, 2011, I served a true and correct copy of the following document(s) on all parties via the Court's ECF system:

**MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**
**DECLARATION OF ANDREW T. O'CONNOR**
**PROPOSED ORDER**

Derek Linke, Esq.                              Derek A. Newman, Esq.
linke@newmanlaw.com                            derek@newmanlaw.com

Newman DuWors LLP, formerly Newman & Newman Attorneys at Law LLP
1201 Third Avenue, Suite 1600
Seattle, WA 98101
Phone: (206) 274-2800
Facsimile: (206) 274-2801
Attorneys for Plaintiff Heroic ERA, Ltd.

I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct. Executed on June 7, 2011, at Boston, Massachusetts.


/s/ Andrew T. O'Connor
Andrew T. O'Connor

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' MOTION FOR DEFAULT JUDGMENT
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)

BOS 872216