Steven M. Cowley (admitted *pro hac vice*)
*scowley@eapdlaw.com*
Andrew T. O'Connor (admitted *pro hac vice*)
*aoconnor@eapdlaw.com*
Joshua W. Gardner (admitted *pro hac vice*)
*jgardner@eapdlaw.com*
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
P: (617) 239-0100
F: (888) 325-9541

Jon-Paul LaPointe (CA Bar. No. 250546)
*jlapointe@eapdlaw.com*
EDWARDS ANGELL PALMER & DODGE LLP
660 Newport Center Drive, Suite 900
Newport Beach, CA 92660
P: (949) 423-2100

Attorneys for Defendants / Counterclaim Plaintiffs
EVONY, LLC and REGAN MERCANTILE, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| HEROIC ERA, LTD., <br><br> Plaintiff / <br> Counterclaim Defendant, <br><br> v. <br><br> EVONY, LLC, et al., <br><br> Defendants / <br> Counterclaim Plaintiffs. | Case No. 10-cv-2458-SBA (BZ) <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927** <br><br> The Honorable Saundra B. Armstrong <br><br> Magistrate Judge Bernard Zimmerman <br><br> Date: Tuesday, October 4, 2011 <br> Time: 1:00 p.m. <br> Location: Courtroom 1, 4th Floor |

# TABLE OF CONTENTS

**Page**

I. HEROIC ERA'S COUNSEL ATTEMPT TO EXCUSE THEIR MISCONDUCT BY ADVOCATING AN ERRONEOUS LEGAL STANDARD ............................... - 1 –

II. HEROIC ERA'S COUNSEL'S STATEMENT THAT "IT FILED BUT A SINGLE MOTION, WHICH THE COURT GRANTED" IS FALSE AND MISLEADING ................................................................................................................ - 4 –

III. THE DILATORY TACTICS BY HEROIC ERA'S COUNSEL UNNECESSARILY AND VEXATIOUSLY INCREASED THE COSTS OF THIS LITIGATION ............................................................................................................ - 6 -

    A. MR. LINKE'S CONTRADICTORY STATEMENTS CONCERNING HIS INAPPROPRIATE DISCLOSURE OF THE FRAPPIER ANALYSIS IS TROUBLING ........... - 6 -

    B. HEROIC ERA'S COUNSEL WAS COMPLICIT IN HEROIC ERA'S DISCOVERY ABUSES ................................................................................................ - 7 -

    C. HAVING NO EXPLANATION FOR THEIR DILATORY TACTICS AND MISCONDUCT, HEROIC ERA'S COUNSEL SIMPLY IGNORE THEM ....................... - 8 -

IV. THE ADMISSION BY HEROIC ERA'S COUNSEL THAT THEY DID NOT INVESTIGATE THE BASES FOR ITS CLAIMS WARRANTS SANCTIONS ......... - 10 -

    A. HEROIC ERA'S COUNSEL ADMIT THEY NEVER COMPARED THE CAESARY CODE WITH THE EVONY CODE AND CITE NO EVIDENCE SUPPORTING THE NONINFRINGEMENT CLAIM ........................................................ - 11 -

    B. HEROIC ERA'S COUNSEL CITE NO EVIDENCE SUPPORTING THE TORTIOUS INTERFERENCE CLAIM ............................................................................. - 13 -

    C. HEROIC ERA'S COUNSEL CONCEDE THEY TOOK NO ACTION WITH REGARD TO THE ADMITTEDLY BASELESS AFFIRMATIVE DEFENSES ................. - 14 -

# TABLE OF AUTHORITIES

**PAGE(S)**

**FEDERAL CASES**

*B.K.B. v. Maui Police Dept.*,
  276 F.3d 1091 (9th Cir. 2002) .................................................................................................2, 3

*Cotterill v. City and County of San Francisco*,
  No. 08-2295, 2010 U.S. Dist. LEXIS 28310 (N.D. Cal. Mar. 10, 2010) ........................2, 3, 4

*Evony, LLC v. Aeria Games & Entertainment, Inc. and Feng Investment, Ltd.*,
  No. 11-cv-00141-SBA (N.D. Cal. 2011) ...............................................................................9, 11

*Lahiri v. Universal Music and Video Distribution Corp.*
  606 F.3d 1216 (9th Cir. 2010) ......................................................................................................2

*Neft v. Vidmark, Inc.*,
  No. 91-56471, 1993 U.S. App. LEXIS 31109 (9th Cir. Aug. 7, 2010) ....................................2

*West Coast Theater Corp. v. City of Portland*,
  897 F.2d 1519 (9th Cir. 1990) .................................................................................................2, 3

**FEDERAL STATUTES**

28 U.S.C. § 1927................................................................................................................. passim

**RULES**

Fed. R. Civ. P. 11 ..............................................................................................................................3

Fed. R. Civ. P. 30(b)(6).....................................................................................................................4

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' REPLY RE MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)
BOS 881079.10

ii

Evony's Sanctions Motion is premised on the fact that throughout the entire litigation— from the filing of the declaratory judgment Complaint through endless run-arounds in discovery without ever producing any meaningful information about who was behind the disputed web based game called "*Caesary*"— Heroic Era's Counsel pursued delay as their only goal. For the longer a declaratory judgment claim remained pending and unresolved, whoever it is that is really behind that game would be allowed to continue reaping significant profits through third-party game sites that were willing to host the game and refuse to take it down under the Digital Millennium Copyright Act. In short, delay for its own sake was Heroic Era's Counsel's mission.

Far from countering the reasoning underlying Evony's Sanctions Motion, Heroic Era's Counsel's Opposition erroneously contends they can avoid any responsibility under 28 U.S.C. § 1927 by characterizing their tactics as passive after filing the Complaint. [Opp. at 10 ("Heroic Era never took any affirmative action.")]. Heroic Era's Counsel's position is contrary to Ninth Circuit law and relies on mischaracterizations of their actions. In fact, Heroic Era's Counsel's "head in the sand" approach is grounds for sanctions under the applicable standard, not a defense. Moreover, Heroic Era's Counsel *did* raise frivolous arguments with this Court, including a baseless request for a protective order, which the Opposition ignores entirely. Unable to cite any evidentiary support for the claims they filed and actively pursued for nine months, Heroic Era's Counsel advocate for the remarkable position that it should be acceptable for an attorney to initiate a frivolous lawsuit merely to create an obstacle for the defendant to protect its intellectual property rights, so long as they do as little as possible to pursue that lawsuit in good faith. 28 U.S.C. § 1927 was specifically designed to deter counsel from misusing federal court litigation for such purposes.

**I.  HEROIC ERA'S COUNSEL ATTEMPT TO EXCUSE THEIR MISCONDUCT BY ADVOCATING AN ERRONEOUS LEGAL STANDARD**

Heroic Era's Counsel erroneously argue that they cannot be sanctioned under 28 U.S.C. § 1927 because they "did not engage in any conduct that 'multiplied the proceedings' because it never *filed* any arguments with the court that lacked merit or were for the purpose of harassment,"

and that any "multiplying of the proceedings" consisted of motions filed by Evony rather than Heroic Era. [Opp. at 9-11 (emphasis added)]. Heroic Era's Counsel cites no Ninth Circuit law supporting their novel position that counsel can only be sanctioned under § 1927 for misconduct occurring solely in their court filings. [*See* Opp. at 9-11]. In the Ninth Circuit, while a frivolous filing with a court by offending counsel is one ground for awarding sanctions under § 1927, it is not the only ground. Sanctions against an attorney under § 1927 may be awarded for "delays and failures to act" that multiply the proceedings. *Cotterill v. City and County of San Francisco*, No. 08-2295, 2010 U.S. Dist. LEXIS 28310 at *20 (N.D. Cal. Mar. 10, 2010) (citing *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519 (9th Cir. 1990)). Such "delays and failures to act" include, *inter alia*, the decision by counsel to "recklessly proceed with the litigation despite a complete lack of factual support for his claim," *Neft v. Vidmark, Inc.*, 1993 U.S. App. LEXIS 31109 at *10 (9th Cir. Nov. 17, 1993), "continued reliance on client information … when discovery fails to reveal facts necessary to maintain the claim," *Cotterill,* 2010 U.S. Dist. LEXIS at *37-38, or for misconduct that prompts the opposing party to file a motion, *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002) ("counsel's misconduct multiplied the proceedings by prompting the motion for a mistrial and the subsequent imposition of sanctions.").

Heroic Era's Counsel's inability to cite any Ninth Circuit law supporting their position is telling. [*See* Opp. at 9-11]. In *West Coast Theater*, the Ninth Circuit affirmed sanctions under § 1927, holding that "counsel recklessly proceeded with the litigation despite a complete lack of factual support or proper service of his opponent," and noted that such reckless misconduct included, *inter alia*, failure to respond to interrogatories and document requests. 897 F.2d at 1528. Likewise, in *Lahiri v. Universal Music and Video Distribution Corp.*, the Ninth Circuit affirmed an award of sanctions under § 1927 against plaintiff's counsel in a copyright case, noting that, "[h]ad [counsel], a self-described experienced copyright lawyer, made even a cursory investigation into the circumstances of [plaintiff's] 21-year old composition of *Thoda*, he would have known [plaintiff] had no copyright interest in music he composed for hire." 606 F.3d 1216 at 1220-1221 (9th Cir. 2010). Similarly, in *Cotterill*, the Northern District of California awarded

§ 1927 sanctions against plaintiff's counsel because "[a] reasonable attorney would have concluded that the case was no longer worth pursuing and would have seriously considered dismissing the case," but instead forced defendants to file motions for summary judgment. 2010 U.S. Dist. LEXIS 28310 at *39; *see also B.K.B.*, 276 F.3d at 1108 (affirming sanctions under § 1927 because counsel's misconduct forced opposing party to file motion for mistrial). Adopting the erroneous position advocated by Heroic Era's Counsel would not only ignore Ninth Circuit precedent, it would make 28 U.S.C. § 1927 irrelevant in light of Fed. R. Civ. P. 11. *See West Coast Theater*, 897 at 1528 ("Although Rule 11 sanctions attach only on the basis of the attorney's signature on the pleadings, motion, or other paper, 28 U.S.C. § 1927 sanctions are available for later proceedings.").

Mr. Newman tries to avoid responsibility by stating that he did *nothing* after filing the Complaint [Opp. at 15], but that is grounds for sanctions, not absolution. Mr. Newman, as the lead counsel who initiated this lawsuit [ECF No. 1], had an ongoing responsibility to determine whether the claims he filed had any evidentiary support. At the very outset of this case, Evony provided a portion of its expert's analysis detailing Heroic Era's infringement, in an effort to establish for Heroic Era's Counsel that their declaratory judgment claim was false and to avoid expensive litigation. [*See* Mtn. at 6-8]. Mr. Newman now admits he never even looked at it and never once spoke with his client concerning the very substantial evidence of infringement. [Newman Decl. at ¶¶ 2 and 12]. Instead, Mr. Newman allowed this case to continue for months while forcing Evony to incur significant unnecessary costs and expenses of having to disprove the frivolous claims he filed. This is exactly the type of misconduct the Ninth Circuit has held warrants sanctions under § 1927, *supra*.

The same holds true for Mr. Linke, who states that he never discussed the Frappier Analysis with his client [Linke Decl., ¶ 33], never performed any analysis of the source codes at issue [*see* Mtn. at 8], and never retained an expert to analyze the very source code he alleges does not infringe. [Opp. at 13:1-2]. Instead, Mr. Linke purposefully obfuscated and delayed these proceedings for as long as possible without having any evidentiary support for the claims he was

EDWARDS ANGELL
PALMER & DODGE
LLP

DEFENDANTS' REPLY re MOTION FOR SANCTIONS
CIVIL ACTION NO. 10-CV-2458-SBA (BZ)
BOS 881079.10

- 3 -

litigating, made worse by his misrepresentations designed to mislead Evony and this Court into believing that Heroic Era intended to comply with its discovery obligations when he had no basis upon which to make such commitments.

In short, the lack of affirmative action by Heroic Era's Counsel after filing the Complaint and in the face of an expert analysis establishing that the Complaint's allegations could not be relied upon is not a defense to Evony's Section 1927 Motion. Instead, it is reason to impose the sanctions requested. *See Cotterill*, 2010 U.S. Dist LEXIS at *48 ("The Court finds that the entire proceedings in this case after November 5, 2008 resulted from Plaintiff's counsel's unreasonable and vexations conduct and awards attorneys' fees and costs accordingly.").

## II. HEROIC ERA'S COUNSEL'S STATEMENT THAT "IT FILED BUT A SINGLE MOTION, WHICH THE COURT GRANTED" IS FALSE AND MISLEADING

Exemplifying the misleading representations that have plagued their litigation tactics throughout, Heroic Era's Counsel argue that they merely "filed but a single motion, which the Court granted" [Opp. at 10], referring only to their motion to quash a deposition subpoena. In itself, that motion is an odd choice to ground Heroic Era's Counsel's argument that they acted in good faith, since Evony's subpoena and the motion to quash would not have been necessary at all had Mr. Linke simply responded to any one of Evony's four requests to meet and confer. [*See* Mtn. at 10]. Moreover, it is not accurate that Heroic Era's motion to quash was simply "granted" outright [Opp. at 10:23], instead the Court (Magistrate Judge Zimmerman) only *conditionally* granted that motion *without* prejudice, while granting Evony leave to re-issue the subpoena, should Heroic Era not provide – as it ultimately did not provide – the necessary information through another witness.

Specifically, the Court held that "the motion to quash is GRANTED WITHOUT PREJUDICE on the conditions that: (1) plaintiff files the declaration of Randall Moeller as discussed during the hearing; and (2) plaintiff appears for a Rule 30(b)(6) deposition on this issue…". [ECF No. 78 at ¶ 1].[1] At the same time, the Court granted Evony's motion to compel

---

[1] Heroic Era never produced a Rule 30(b)(6) witness despite the Court's Order. [ECF No. 89].

and ordered that "[a]ll documents withheld on the basis of privilege in connection with the motion for contempt" be produced. [ECF No. 78 at ¶ 3]. Accordingly, the Court effectively gave Evony everything its subpoena requested with the exception of an immediate deposition of Heroic Era's Counsel. The Court noted that such deposition appeared moot in light of the fact that default would enter against Heroic Era, but granted Evony leave to re-raise this issue with the Court in the future. [Feb. 25, 2011 Tr. at 12:15-14:1 (Supp. O'Connor Decl., Ex. A)]. In short, Heroic Era's Counsel's representation that their motion to quash was "granted," with no further explanation of the contingent nature of that ruling, is misleading. Additionally, Mr. Linke does not deny that he purposefully ignored Evony's repeated requests to meet and confer on this issue in order to avoid any subpoena or subsequent motion to quash. [Mtn. at 10]. Had Mr. Linke simply responded to any one of Evony's four requests to meet and confer, Heroic Era's motion would have been avoided.

Additionally, Heroic Era's Counsel's argument that they "filed but a single motion" inexplicably ignores the fact that they filed a groundless motion for a protective order seeking to restrict Evony's ability to take live depositions of subpoenaed witnesses, which was denied. [*See* ECF No. 60 at 1:16-21 ("Heroic Era moves the Court for a protective order that any deposition of witnesses…be conducted via videoconference."); *see also* ECF No. 78 at ¶ 7 ("Plaintiff's request for a protective order is denied.")]. Having served no objections to the October 8, 2010 subpoenas for depositions of Heroic Era's witnesses, scheduled to take place in the beginning of December 2010 [Evony's Motion for Contempt and to Compel, ECF No. 71, at Exs. 2-9], Heroic Era's Counsel sought a protective order on January 31, 2011 [ECF No. 60], nearly *four months after* the subpoenas were served, long after the deadline to object had expired without objection, and long after Mr. Linke represented that the witnesses would appear for their depositions at the date and location specified in the subpoenas. [*See* Mtn. at 16-19]. The Court noted Heroic Era's evasive discovery tactics when denying the motion for protective order [Feb. 25, 2011 Tr. at 37:11-13 ("inasmuch as I believe there's been a pattern of trying to evade discovery by Heroic Era, I am not inclined to put further obstacles in the path of discovery.") (O'Connor Decl., Ex. 2)]. All of the

1 evasive tactics regarding the on-again-off-again depositions of witnesses who never appeared
2 were perpetrated by and through Heroic Era's Counsel.

### III. THE DILATORY TACTICS BY HEROIC ERA'S COUNSEL UNNECESSARILY AND VEXATIOUSLY INCREASED THE COSTS OF THIS LITIGATION

The declarations of Heroic Era's Counsel demonstrate that that they did *nothing* to meet their obligations to pursue and proceed with litigation only if there is a good faith basis to do so. The lack of such good faith efforts apparent from their declarations supports imposition of Evony's attorneys' fees and costs under 28 U.S.C. § 1927.

#### A. MR. LINKE'S CONTRADICTORY STATEMENTS CONCERNING HIS INAPPROPRIATE DISCLOSURE OF THE FRAPPIER ANALYSIS IS TROUBLING

As set forth in Evony's Motion, there is strong evidence that Mr. Linke violated his Non-Disclosure Agreement and disclosed at least portions of the Frappier Analysis to Heroic Era. Mr. Linke has now offered contradictory representations to this Court concerning such disclosure. [Mtn. at 10-12]. After ignoring four separate letters dated November 1, November 12, November 24 and November 29, 2010 requesting that Mr. Linke confirm whether he disclosed any portion of the Frappier Analysis to Heroic Era, and in light of Heroic Era's failure to adequately respond to discovery, Evony had no alternative but to serve a subpoena on the law firm of Newman & Newman seeking information relating to the disclosure. [Mtn. at 10]. At the February 25, 2011 hearing on Heroic Era's Motion to Quash before this Court, Mr. Linke represented that he had indeed "disclosed characterizations of the nature of that content. Specifically, the kinds of content that led them to believe that there was copyright-infringement." [Mtn. at 11 (citing Feb. 25, 2011 Tr. at 9:16-19 (O'Connor Decl., Ex. 2))]. Under the terms of the Non-Disclosure Agreement, however, Mr. Linke was not authorized to disseminate *any* information from the Frappier Analysis in *any* manner to Heroic Era. [O'Connor Decl., Ex. 8 (ECF No. 109-10 at pages 9-10)].

Now facing sanctions for his admitted unlawful disclosure, Mr. Linke reverses position and makes a contradictory declaration stating that "I did not disclose the expert-report synopsis or its contents" to Heroic Era. [Linke Decl. at ¶ 33; *see also* Linke Decl. at ¶ 9; *see also* Opp. at 4].

Mr. Linke offers no explanation whatsoever for his contradictory representations to this Court. The only reasonable conclusion to be drawn is that Mr. Linke is now attempting to conceal his breach of the Non-Disclosure Agreement, which led directly to Heroic Era modifying its infringing source code in order to conceal its infringement.

### B. HEROIC ERA'S COUNSEL WAS COMPLICIT IN HEROIC ERA'S DISCOVERY ABUSES

As set forth in Evony's Motion (at 16-19), Mr. Linke spent months misleading Evony into believing that Heroic Era's witnesses would appear for depositions at the date and location noticed in the subpoenas. While Mr. Linke states that he "*promptly* provided Evony and the Court with information regarding witness availability at deposition" and "*subsequently* learned that five [witnesses] were unwilling to testify" [Opp. at 6 (emphasis added)], no mention is made regarding *when* he came to learn this information, and no documents corroborating such vague statements have ever been produced. Heroic Era's Counsel misleadingly states that they agreed to "work with the witnesses to obtain travel visas" [Opp. at 6], but Mr. Linke's previous declaration filed with this Court states that he did nothing more than forward the subpoenas to Heroic Era and made no effort whatsoever to "work with the witnesses to obtain travel visas." [Jan. 31, 2011 Linke Decl., ECF No. 62, at ¶ 9 ("I sent deposition subpoenas from Evony LLC for eight Chinese national witnesses (the 'Chinese Witnesses') to Heroic Era in China, and was informed by Heroic Era that Heroic Era communicated the subpoenas to all of the persons served and investigated the process for obtaining visas.")]. In fact, it appears the only investigation Mr. Linke performed into obtaining a travel visa occurred *after* Evony filed a motion to compel the depositions and comprised of visiting an anonymous blog entitled "How to Get United States Visa for Chinese Girlfriend." [*Id.* at Ex. B]. While Heroic Era's Counsel now argues that "[n]either Heroic Era nor its counsel either promised or could possibly guarantee that China would issue visas" [Opp. at 6], Mr. Linke previously represented to Evony's counsel that all the subpoenaed witnesses would appear for their depositions at the date and location noticed, even after Evony's counsel raised the issue of travel visas. [*See* Nov. 15, 2010 Tr. at 18:10-20:13

(O'Connor Decl., Ex. 13) ("If the argument is ever going to be put forward that they are not prepared to travel, they don't have appropriate visas, I'm asking you to tell us, is there anything.")]. To date, there has never been any representation by Heroic Era or its Counsel that the subpoenaed witnesses ever applied for travel visas despite the misleading statements by Mr. Linke.

Similarly, Mr. Linke argues that he "worked with his client in an effort to cooperate" with discovery [Opp. at 4], but his declarations establish only that he forwarded Evony's discovery requests to his client, offered no assistance or guidance on how to comply with the discovery requests, and then simply took Heroic Era at its word that there were no more documents to produce. [*See, e.g.,* Linke Decl., ECF No. 118, at ¶ 30 ("I understand Heroic Era searched its files") and ¶ 31 ("I have no reason to believe otherwise")]. Mr. Linke fails to provide any information regarding this alleged search of files or what was done to ensure Heroic Era met its discovery obligations, and provides no documents—not even a litigation hold memorandum—indicating that any such guidance was provided. Mr. Newman likewise admits that he *never* communicated with his client to ensure they were complying with discovery. [Newman Decl., ¶ 12]. Moreover, Mr. Linke does not deny that he told Evony on November 15, 2010 that he was in the process of preparing documents from the subpoenaed witnesses for production, yet no such documents have ever been produced. [*See* Mtn. at 16-17 (quoting Nov. 15, 2010 Tr. at 17:15-20:13 (O'Connor Decl., Ex. 13))].

The uncorroborated, misleading and contradictory statements raised by Mr. Linke, and Mr. Newman's admitted failure to do anything, leave little doubt that Mr. Linke was complicit in obfuscating discovery in this case and, at the very least, he and Mr. Newman failed to meet their obligations as officers of this Court to ensure their client met their discovery obligations.

### C. HAVING NO EXPLANATION FOR THEIR DILATORY TACTICS AND MISCONDUCT, HEROIC ERA'S COUNSEL SIMPLY IGNORE THEM

The opposition by Heroic Era's Counsel ignores the majority of the misconduct identified in Evony's Motion, presumably because they have no justification for such blatant misconduct.

Instead, Heroic Era's Counsel takes the remarkable position that "[a]ll of the conduct alleged—with the exception of Heroic Era's successful motion to quash[2]—either reduced the amount of litigation or had no effect on the proceedings." [Opp. at 9]. The following examples demonstrate that this representation is untrue.

- Mr. Linke does not deny that he refused to cooperate with the drafting of the joint case management statement, wasting significant time and expense, and forcing Evony to file a motion for extension of time. [*See* Mtn. at 22:10-19].

- Heroic Era's Counsel does not deny that they refused to serve any initial disclosures for nearly four months in an effort to conceal the fact that Heroic Era provided no documents or witnesses to supports its claims. [*See* Mtn. at 15].

- Mr. Linke does not deny that he repeatedly refused to participate in several meet and confer sessions, requiring Evony to pay for Court-ordered stenographers and wasting significant time and expense. [*See* Mtn. at 23:8-18]. Such refusals to participate in the meet and confer process could only have been designed to delay these proceedings and prolong Heroic Era's ongoing infringement.

- Heroic Era's Counsel argue that they timely disclosed Feng Investment as having a financial interest in the *Caesary* Game on "November 19, 2010" in an (untimely) response to an interrogatory [Opp. at 4-5], but ignore the fact that Mr. Linke previously argued to this Court that Feng Investment did not have a financial interest in the litigation requiring disclosure. [*See* Mtn. at 15-16 (citing ECF No. 41)]. Heroic Era's Counsel offers no explanation for why they refused to disclose the relationship between Heroic Era and Feng Investment in the Initial Disclosures. Notably, both Mr. Newman and Mr. Linke now represent Feng Investment in the related case of *Evony, LLC v. Aeria Games & Entertainment, Inc. and Feng Investment, Ltd.*, No. 11-cv-00141-SBA (N.D. California). Had Heroic Era's Counsel included this information in Heroic Era's Initial Disclosures as was required, Evony would not have been put to the expense of its first motion to compel.

---

[2] As noted in Section II, *supra*, it is quite misleading to describe Heroic Era's Motion to Quash as simply "successful."

[*See* Mtn. at 15-16].

- Heroic Era's Counsel served untimely discovery responses containing boilerplate objections and no privilege log, forcing Evony to file a motion to strike and to compel the disclosure of, *inter alia,* all information withheld on the ground of privilege, which the Court granted. [ECF No. 78].

- Heroic Era's Counsel does not deny that indiscriminately designating all documents "confidential" or "highly confidential" violated the Court's Protective Order, nor does Mr. Linke deny that he refused to meet and confer with Evony regarding this issue, forcing Evony to lodge a motion to file Heroic Era's inappropriately designated documents under seal, which Evony then had to re-file because no justification was ever provided for Heroic Era's Counsel's inappropriate designation of the documents. [*See* Mtn. at 22:20-23:7].

- Heroic Era's Counsel contend that "Evony sought discovery sanctions against Heroic Era's counsel" and that the Court "found no sanctionable conduct on the part of counsel," then accuse Evony of misrepresenting facts.[3] [Opp. at 7:21-23 (citing ECF No. 66 at 13:23-24)]. This statement is troubling. In the motion relied upon, Evony requested Heroic Era's Counsel "be held in *contempt* for failing to comply with Paragraph 3 of this Court's Second Discovery Order." [ECF No. 66 at 13:23-24 (emphasis added)]. Far from "finding no sanctionable conduct on the part of counsel" [Opp. at 7:23-25], the Court determined that Heroic Era's Counsel had not complied with the Court's Order, questioned whether Mr. Linke had engaged in a "proper exercise of [his] professional duties and responsibilities," and ultimately "reserve[ed] judgment" on whether to hold Mr. Linke in contempt. [Feb. 25, 2011 Tr. at 14:3-18:21 and 35:18-24 (Supp. O'Connor Decl., Ex. A)].

As demonstrated from the foregoing examples, the argument by Heroic Era's Counsel that their misconduct "reduced the amount of litigation" lacks credulity.

---

[3] It is not Evony's argument that Magistrate Judge Zimmerman's Report and Recommendation expressly stated that the misconduct was perpetrated by Heroic Era's Counsel. Rather, Evony contends that Heroic Era's Counsel bears responsibility for the misconduct described by Magistrate Judge Zimmerman.

## IV. THE ADMISSION BY HEROIC ERA'S COUNSEL THAT THEY DID NOT INVESTIGATE THE BASES FOR ITS CLAIMS WARRANTS SANCTIONS

Heroic Era's Counsel admittedly did *nothing* to determine whether the claims they filed had any evidentiary support. Pursuant to Ninth Circuit law (rather than the erroneous standard advocated by Heroic Era's Counsel), continuing to maintain claims without evidentiary support warrants sanctions under § 1927. *See* Section I, *supra*. In an effort to mislead this Court, Heroic Era's Counsel argues that Heroic Era produced "gigabytes of computer data" [Opp. at 3], carefully failing to disclose how many documents were actually produced. In fact, the production by Heroic Era's Counsel consisted entirely of multiple copies of the same small handful of documents produced over and over. [Supp. O'Connor Decl., Ex. B].[4] Notably, Heroic Era's Counsel is unable to point to even one document obtained from their client that actually provides evidentiary support for the claims asserted in their Complaint, nevertheless Heroic Era's Counsel continued to pursue those claims for months.

### A. HEROIC ERA'S COUNSEL ADMIT THEY NEVER COMPARED THE *CAESARY* CODE WITH THE *EVONY* CODE AND CITE NO EVIDENCE SUPPORTING THE NONINFRINGEMENT CLAIM

In their opposition, Heroic Era's Counsel vaguely state that they "produced documents and information supporting Heroic Era's defenses to copyright infringement (and commensurate noninfringement claim)," yet fail to identify even a single document produced supporting this statement. [Opp. at 11-12 (no citation provided)]. Instead, Heroic Era's Counsel argues that the basis for the noninfringement claim is the uncorroborated and self-serving (untimely) statement in response to Interrogatory No. 1. [Opp. at 3:15-19]. Heroic Era's Counsel, however, does not deny that there are no documents supporting this self-serving statement [*see* Mtn. at 9:5-26] and no Heroic Era witness ever agreed to come to the United States and testify in support of that answer.

---

[4] In Evony's Reply in Support of Defendants' Motion for Contempt and to Compel, Evony discussed Heroic Era's duplicative production at length and offered to provide the Court with a copy of the discs produced by Heroic Era's Counsel so the Court may confirm for itself that Heroic Era's Counsel has misrepresented the scope of its production. [ECF No. 66 at 11-12]. Evony again offers to furnish those discs to the Court upon request, as they will establish conclusively the wholly misleading nature of Heroic Era's Counsel's description of their production.

Further, Heroic Era's Counsel misleadingly argues that Heroic Era produced "multiple copies of *Caesary's* source code" [Opp. at 3:7-10], conveniently omitting the fact that it only produced two of at least ten versions of the *Caesary* client-side source code and refused to produce any *Caesary* server-side source code, all of which are the subject of the noninfringement claim. [*See* Frappier Expert Report, ECF No. 92-2, at ¶¶ 4-11]. Similarly, Heroic Era's Counsel's assertion that Heroic Era produced "visual images of *Caesary's* icons and other artwork" [Opp. at 3] is misleading, given that the graphical "images" and "artwork" provided are not the subject of the infringement dispute—the *Caesary* source code is the relevant publication.

Even more telling are the admissions by Heroic Era's Counsel that they performed no comparison of the *Caesary* and *Evony*® source codes to determine whether Heroic Era's noninfringement claim had any merit. After receiving the Frappier Analysis, Mr. Linke acknowledge that it would be "productive" if he could share with Heroic Era the exhibits in the Frappier Analysis detailing the side-by-side comparison of the *Caesary* and *Evony*® source codes, but Heroic Era refused to sign the required Non-Disclosure Agreement. [Mtn. at 8 (quoting email from Mr. Linke (O'Connor Decl., Ex. 4))]. Contrary to Heroic Era's Counsel's argument, Evony does **not** suggest that Heroic Era's Counsel had to blindly accept an adverse party's expert report. [Opp. at 11]. Evony does argue, however, that Heroic Era's Counsel was obligated to do *something* after receiving the Frappier Analysis, such as compare their client's code with Evony's code, hire an expert of their own to analyze the code, or dismiss the claim for lack of evidence. Heroic Era's Counsel do not deny that they performed no analysis whatsoever. [*See* Mtn. at 8]. In fact, Mr. Newman admits that he never even looked at the Frappier Analysis nor consulted with his client, despite the fact that he signed the Complaint. [Newman Decl., ¶¶ 2 and 12].

Even more remarkable is the argument by Heroic Era's Counsel that "Heroic Era never had the opportunity to cross examine Mr. Frappier, or present its own expert in rebuttal." [Opp. at 13]. This is incorrect. Mr. Linke received the Frappier Analysis on July 30, 2010 [O'Connor Decl., Ex. 3] and Heroic Era's default did not enter until March 9, 2011. Heroic Era's Counsel had over seven months to depose Mr. Frappier or retain their own expert, but they chose inaction

as their sole tactic.

The fact that Heroic Era's Counsel did *nothing* after receiving the Frappier Analysis, that there are no documents supporting Heroic Era's noninfringement claim, yet continued to engage in the aforementioned dilatory misconduct that forced Evony to engage in lengthy and expensive discovery procedures, is exactly the type of conduct that is sanctionable in the Ninth Circuit under 28 U.S.C. § 1927. *See* Section I, *supra*.

### B. HEROIC ERA'S COUNSEL CITE NO EVIDENCE SUPPORTING THE TORTIOUS INTERFERENCE CLAIM

Similar to the noninfringement claim, Heroic Era's Counsel served responses to document requests stating that "no documents exist" supporting the *prima facie* element of damages to the tortious interference claim. [Mtn. at 14]. Moreover, Heroic Era's Counsel offer no explanation for how they could possibly maintain the claim of tortious interference with Heroic Era's purported business relationship with PayPal when no such relationship exists and Heroic Era's responses to document requests state that no documents exist supporting this claim. [Mtn. at 14-15].

Unable to justify maintaining this frivolous claim, Heroic Era's Counsel misleadingly argue that "Heroic Era served supplemental initial disclosures *describing* the damages it suffered from Evony's tortious interference" [Opp. at 4 (emphasis added)], completely ignoring the fact that the original Initial Disclosures stated that "Heroic Era has not claimed damages in the above-captioned lawsuit." [O'Connor Decl., Ex. 9]. The referenced "supplemental initial disclosures" demonstrates that the statement by Heroic Era's Counsel that they *described* Heroic Era's damages is simply untrue:

> Heroic Era has requested damages arising from Evony's ongoing tortious interference. Accordingly, a computation of damages is not possible until Heroic Era has obtained addition[al] discovery relating to the impact of Evony's conduct on Heroic Era's business relations.
>
> Heroic Era will further supplement this disclosure as discovery continued to the extent information responsive to Fed. R. Civ. P. 26(a)(1) is obtained.

[Linke Decl., Ex. D]. Heroic Era never supplemented this disclosure.

Similar to the noninfringment claim, Heroic Era's Counsel likewise relies on the uncorroborated statement in response to Interrogatory No. 4 that "Heroic Era lost substantial revenue" [Opp. at 4], yet Heroic Era's Counsel does not deny that in requests for production seeking documents supporting Heroic Era's contention that it "lost substantial revenue," Mr. Linke signed responses stating that "Heroic Era has no responsive documents." [*See* Mtn. at 14]. In fact, Mr. Linke's Declaration states that Heroic Era told him they produced "every document in its possession, custody, or control responsive to Evony's demands" and that "I have no reason to believe otherwise." [Linke Decl. at ¶ 31]. If no documents showing "lost substantial revenue" were produced, and Mr. Linke believes "every document" was produced, continuing to maintain a claim for lost revenue simply cannot be justified.

In an effort to salvage some semblance of credibility, Heroic Era's Counsel now argues that Heroic Era produced a single-page document "showing how Evony's threats to Kongregate resulted in reduced Internet traffic to its *Caesary* game." [Opp. at 4]. This document, however, demonstrates that internet traffic actually *increased* from approximately 30,000 to over 70,800, and that 20.29% of that *increase* was due to *new* internet traffic. [Linke Decl., Ex. E]. Clearly, Heroic Era's Counsel cannot claim to have relied on a document that contradicts Heroic Era's tortious interference claim as justification for maintaining that claim.

C. **HEROIC ERA'S COUNSEL CONCEDE THEY TOOK NO ACTION WITH REGARD TO THE ADMITTEDLY BASELESS AFFIRMATIVE DEFENSES**

Mr. Linke does not deny that, during a stenographically recorded meet and confer with Evony's counsel on November 3, 2010, he conceded that he did not know the basis for many of Heroic Era's affirmative defenses. [*See* Mtn. at 20-21]. In response to interrogatories seeking the bases for these affirmative defenses, the Court held that Heroic Era provided nothing more than "boilerplate responses" that were "evasive and not made in good faith." [*Id.* (citing Order After Hearing, ECF No. 78, at ¶ 5)]. Even now, Heroic Era's Counsel concede that "Heroic Era did not file any motions or take any other action based on those affirmative defenses" [Opp. at 11], yet refused to dismiss them, forcing Evony to file a motion to strike, which the Court granted. [ECF

No. 78 at ¶ 5]. Heroic Era's Counsel mistakenly believes that it is perfectly acceptable to maintain knowingly frivolous claims and subject opposing parties to the unnecessary expense of litigating those claims. Heroic Era's Counsel's misconduct is inexcusable and could have no other purpose but to unreasonably and vexatiously increase the costs of this litigation. Again, this is exactly the type of conduct the Ninth Circuit has held to be sanctionable under 28 U.S.C. § 1927.

Respectfully submitted,

Dated: August 12, 2011         EDWARDS ANGELL PALMER & DODGE LLP

By: /s/ Andrew T. O'Connor

Steven M. Cowley
Joshua W. Gardner
Andrew T. O'Connor
Jon-Paul LaPointe

Attorneys for Defendants /
Counterclaim Plaintiffs
EVONY, LLC and REGAN MERCANTILE, LLC

# CERTIFICATE OF SERVICE

COMMONWEALTH OF MASSACHUSETTS, COUNTY OF SUFFOLK:

I, Andrew T. O'Connor, declare as follows:

I am employed in the County of Suffolk, Commonwealth of Massachusetts. I am over the age of 18 and not a party to the within-entitled action. My business address is 111 Huntington Avenue, Boston, Massachusetts 02119. On August 12, 2011, I served a true and correct copy of the following document(s) on all parties via the Court's ECF system:

**REPLY IN SUPPORT OF MOTION FOR SANCTIONS**
**DECLARATION OF ANDREW T. O'CONNOR**

| | |
|---|---|
| Derek Linke, Esq. | Derek A. Newman, Esq. |
| linke@newmanlaw.com | derek@newmanlaw.com |

Newman DuWors LLP, formerly Newman & Newman Attorneys at Law LLP
1201 Third Avenue, Suite 1600
Seattle, WA 98101
Phone: (206) 274-2800
Facsimile: (206) 274-2801
Attorneys for Plaintiff Heroic ERA, Ltd.

I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct. Executed on August 12, 2011, at Boston, Massachusetts.

      /s/ Andrew T. O'Connor
          Andrew T. O'Connor