UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEROIC ERA, LTD, ) <br> ) <br> Plaintiff(s), ) <br> ) <br> v. ) <br> ) <br> EVONY, LLC, et al., ) <br> ) <br> Defendant(s). ) <br> _____ ) | No. C10-2458 SBA (BZ) <br><br> **ORDER DENYING SANCTIONS** |

    Evony, LLC and Regan Mercantile, LLC (collectively "Evony") have moved for an order imposing sanctions against Derek A. Newman ("Newman") and Derek Linke ("Linke"), counsel for plaintiff and counterdefendant, Heroic Era, Ltd. ("Heroic Era"), pursuant to 28. U.S. § 1927. By its motion, Evony asks the court to find Newman and Linke personally responsible for fees and costs incurred by Evony after July 30, 2010, in the amount of $368,385.15. For the reasons set forth below, Evony's motion is **DENIED**.

    On June 3, 2010, Heroic Era sued Evony seeking a declaratory judgment that Heroic Era did not misappropriate Evony's trade secrets in the development of Heroic Era's

1

1 *Ceasary* game, and did not infringe on Evony's copyright
2 interests, and seeking relief for tortious interference with
3 business relations. (Docket No. 1.) On August 13, 2010,
4 Evony counterclaimed for (1) copyright infringement under 17
5 U.S.C. §§ 501 *et seq.*; and (2) misappropriation of copyright.
6 (Docket No. 19.)

7 I previously found that Heroic Era, almost from the
8 outset of this litigation, failed to comply with its discovery
9 obligations. (See Docket No. 108.) Based on its non-
10 compliance, I ordered Heroic Era to produce certain documents
11 and a Rule 30(b)(6) witness for deposition by March 9, 2011.
12 (Docket No. 78.) I also warned Heroic Era that failure to
13 abide by my Order could result in sanctions pursuant to Rule
14 37(b)(2)(A), such as the entry of Heroic Era's default on
15 Evony's counterclaims. (Id.) On March 9, 2011, Heroic Era's
16 counsel notified the court that Heroic Era would not produce
17 documents or a corporate witness - a direct violation of my
18 Order. I then struck Heroic Era's complaint and dismissed its
19 action against Evony with prejudice. (Docket No. 89.) I also
20 struck Heroic Era's answer to the counterclaim and ordered
21 Evony to move for a default judgment to prove-up its damages.
22 After Judge Armstrong referred that motion to me (Docket Nos.
23 92, 93), I issued a Report and Recommendation. Judge
24 Armstrong adopted it and entered judgment in favor of Evony on
25 its counterclaims in the amount of $608,213.37. (Docket No.
26 125.) Part of that judgment included an award of $368,385.15
27 in attorneys' fees and costs. (Docket No. 108.) Evony then
28 filed this motion to have its attorneys' fees and costs

2

imposed as sanctions against Newman and Linke.  Following a referral from  Judge Armstrong, I held a hearing at which Mssrs. Newman and Linke appeared.

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927. Imposition of costs under this statute requires a finding of recklessness on the part of the attorney sanctioned.  See Lahiri v. Universal Music & Video Distribution Corp., 606 F.3d 1216, 1219 (9th Cir. 2010).

A court also has the inherent authority to sanction parties for bad faith conduct in the course of litigation. See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991).  This authority is independent of, and not constrained by, statutory sources of authority for imposing such sanctions.  Id. at 50. In order to sanction a party pursuant to this inherent authority, a court must find that the party acted in bad faith.  See Primus Auto. Fin'l Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997).  Bad faith means that the party or attorney acted "vexatiously, wantonly, or for oppressive reasons."  Id.  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996).  Bad faith can also consist of "delaying or disrupting the litigation."  Hutto v. Finney, 437 U.S. 678,

3

689 n.14 (1978).

Initially, Evony recites a number of discovery abuses perpetrated by Heroic Era and seeks to hold counsel liable for them. Evony asserts that Newman and Linke impeded the discovery process by failing to produce responsive documents in response to Evony's requests for production, refusing to meet and confer regarding witness depositions, and waiting until the proverbial eleventh hour before informing Evony that no 30(b)(6) witness would appear for deposition as expected. Evony further argues that even after the court's March 9, 2011 Order requiring Heroic Era to produce all documents withheld on privilege grounds, no documents were produced (presumably because no investigation by counsel was performed concerning the merits of the noninfringement claim).

In response, Newman and Linke point out they provided substantive discovery responses to Evony's written demands, and that Heroic Era provided Evony with "several gigabytes of computer data" as well as interrogatory responses and the graphic files Heroic Era used to create the *Caesary* game, among other documents and data.[1] (See Pl.'s Opp. p. 3.) As I stated during the hearing, I am troubled by what appears

---

[1] At the hearing, Evony argued that the computer data produced was "garbage." Evony's counsel provided the court with a copy of the production, which the court has reviewed. There are a number of files on the CD that the court could not open, either because they are corrupt or because they require a special program. While the production does not appear to be as substantive as Linke represented it to be, it does contain what appear to be responsive documents and graphics, and Linke represented to the court during the hearing that he worked with Heroic Era to collect responsive documents and produced everything in his possession.

4

to have been discovery gamesmanship on the part of both parties' counsel. They have regularly accused each other of many wrongs, and from the court's recollection, neither party is absolved from having utilized overly-aggressive or ill-conceived techniques.[2] I previously warned Linke that conduct such as canceling a meet and confer session only four minutes prior to its scheduled time was inconsistent with the manner in which this court expects its attorneys to conduct themselves. Nonetheless, I find that sanctions pursuant to section 1927 are not warranted. Based on Linke's representations regarding the reasons for the discovery difficulties encountered in this case, I find insufficient evidence of the bad faith or abuse required to impose sanctions under section 1927 or this court's inherent powers. While Linke's approach to this lawsuit was at times questionable, his conduct was not so egregious to warrant the imposition of sanctions. See <u>Lahiri v. Universal Music and Video Distrib. Corp.</u>, 606 F.3d 1216, 1223 (9th Cir. 2010) ("The district court's authority to sanction attorneys under § 1927 and its inherent disciplinary power must be exercised with restraint and discretion."). That discovery abuses occurred is undisputed; that is why Evony obtained a default judgment for over $600,000. What Evony has not established is that it was Linke and Newman, and not Heroic Era, who were

---

[2] For example, Evony's motion to compel Heroic Era's Rule 3-16 corporate disclosure statement (Docket No. 37) as a means for obtaining discovery was, as stated at that hearing, one of the least meritorious disputes that the court has ever had to resolve.

responsible for the "blatant discovery abuses and litigation misconduct." (Def.'s Mot. p. 3.)

Second Evony claims that Newman and Linke continued to litigate Heroic Era's noninfringement claim without any evidentiary support and "in the face of uncontroverted evidence undermining the claim." (Def.'s Mot. p. 6.) Evony asserts that soon after Heroic Era's complaint was filed, Evony provided Newman and Linke with excerpts of an expert analysis (the "Frappier Analysis") that demonstrated that Heroic Era's *Caesary* game infringed Evony's copyrighted code.[3] Nevertheless, Evony claims that Newman and Linke continued to pursue Heroic Era's noninfringement claim and made "no effort to investigate whether the claim" had any merit. (Def.'s Mot p. 8.)

Evony also asserts that Newman and Linke should have dismissed Heroic Era's tortious interference claim after they received the Frappier Analysis. Evony asserts that the tortious interference claim is dependent on the noninfringement claim, and that because the Frappier Analysis demonstrated there was no viable claim for noninfringement, there was also no viable claim for tortious interference.

In response, Newman and Linke claim that the Frappier Analysis was not a full report, and that the report's limited synopsis, which Newman and Linke were not permitted to share

---

[3] The Frappier Analysis was provided to Newman and Linke on or about July 30, 2010. (Def.'s Mot. p. 24.) Evony asserts that the Frappier Analysis demonstrated that the source code utilized to create the *Caesary* game was identical to the source code utilized to create Evony's game, so much so that the typographical errors in the source codes matched.

with their client, was not sufficient grounds to abandon Heroic Era's noninfringement claim.[4] Simply put, Newman and Linke argue that they were under no obligation to accept the Frappier Analysis as "gospel" and dismiss Heroic Era's complaint. During the hearing, Linke represented to the court that he did in fact investigate the noninfringement claim by (1) reviewing the Frappier Analysis and discussing it with Heroic Era; (2) logging online to play both the *Caesary* game and Evony's game to compare the games; and (3) locating approximately twenty witnesses with knowledge of how the *Caesary* game was created and disclosing those names to Evony.[5]

As I stated at the hearing, I do not believe that Linke's approach to this case resulted in a duplication or multiplication of proceedings. I agree with Newman and Linke that Heroic Era was under no obligation to dismiss its lawsuit based on the Frappier Analysis given that it was only a partial report drafted by Evony's expert witness, and that Heroic Era disputed its analysis. Ultimately, Evony obtained a favorable result; Heroic Era's complaint was stricken and a judgment against Heroic Era was entered in the amount of $608,213.37. I believe that the relief granted under Rule 37 is adequate to redress Evony for any difficulties it may have

---

[4] Newman also states that he never reviewed the Frappier Analysis and only had limited involvement in the case.

[5] After the hearing, the court issued an order requiring Linke to submit his time records for the periods of May 2010 to August 2010 and November 15, 2010 to December 20, 2010. The records reflect that Linke did have multiple discussions with his contact at Heroic Era regarding discovery responses and deposition preparation, consistent with the representations he made to the court during the hearing.

encountered in this case and therefore decline to impose additional sanctions. I also do not believe that Linke acted in subjective bad faith, which is a necessary finding before the court can support a sanction of attorneys' fees under section 1927. <u>Lobato v. Bank of Am., N.A.</u>, Case No. 10-106, 2010 U.S. Dist. LEXIS 69194, at *6 (N.D. Cal. July 12, 2010) (declining to impose sanctions because "[s]uspicions are not sufficient to warrant imposition of Section 1927 sanctions ... and the sworn record here is too thin to support a finding that subjective bad faith has motivated [counsel's] conduct in this proceeding"); see also <u>In Re Keegan Management Co.</u>, 78 F.3d 431, 436 (9th Cir. 1196).

It is therefore **ORDERED** that Evony's motion is **DENIED.**

Dated: November 21, 2011

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-REFS\HEROIC ERA V. EVONY\BZ SANCTIONS ORDER.wpd